**David Seymour GRAVES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15423.**

United States Court of Appeals
Ninth Circuit.

Jan. 23, 1958.

---

J. B. Tietz, Fred Okrand, Wirin, Riss-man & Okrand, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Lloyd F. Dunn, Bruce A. Bevan, Jr., Louis Lee Abbott, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before HEALY, POPE and CHAMBERS, Circuit Judges.

POPE, Circuit Judge.

Graves appeals from a judgment of conviction of having knowingly failed and neglected to report for induction into the armed forces of the United States in violation of the Universal Military Training and Service Act, 50 U.S.C.A. Appendix, § 462.[1]

The indictment charged that the defendant was subject to the provisions of the Act and to selective service thereunder; that he was classified IA and ordered to report for induction on October 13, 1955, in San Bernardino County, California, "and at said time and place the defendant did knowingly fail and neglect to perform a duty required of him under said act and the regulations promulgated thereunder in that he then and there knowingly failed and neglected to report for induction into the armed forces of the United States as so notified and ordered to do." Following a verdict of guilty the defendant was sentenced to serve a term of imprisonment of a year and a day.

Appellant has specified a number of errors including the giving and refusing of certain instructions and the refusal of the court to hear his claim that his IA classification was without basis in fact. Because of the conclusions which we reach in this case we find it unnecessary to consider any question present other than the challenge to the sufficiency of the evidence to sustain a conviction. Denial of appellant's motion for judgment

---

1. The section provides in part that any person "who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title, * * * or rules, regulations, or directions made pursuant to this title * * * shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment * * *."

of acquittal on this ground is specified as error.

The evidence shows that the appellant, after registering for the draft, was first classified IIC on May 23, 1951. This was an agricultural deferment because appellant's occupation was that of a beekeeper, looking after several thousand hives of bees which were located on numerous farms and over a considerable area. On March 10, 1954, he received a IA classification from the local board. After rather extended efforts to reverse this classification and to secure deferment on various grounds, his final appeal was rejected on September 2, 1954, and on November 23, 1954, he was found acceptable for military service on a preinduction physical examination. On August 23, 1955, he was ordered to report for induction on September 8, 1955.

Upon receipt of this notice to report appellant and his mother went to the Chairman of the local board and requested a postponement of his induction on the ground that the date named was in the midst of the harvest of the honey and during a critical time in the beekeeping business. Both of them testified that they were told by the Chairman that he would recommend a 30 day extension. Notice of such an extension, to the October call, was sent to appellant. They returned to the Chairman with the plea that appellant needed 60 days delay to enable him to complete his essential work. The Chairman finally said: "Well I will give you 60 days." They testified that this was satisfactory to appellant because it would postpone the day for reporting for induction to approximately November 8 when the harvest would be over. There is no contradiction of this testimony in the record.[2]

After this last interview with the Chairman, appellant left the county of his residence and went North to Kern County, some 160 miles distant, where the bulk of his hives were located.[3] He then traveled about from field to field attending to his bees, and the evidence is clear that during this time it was not possible to reach him by mail or otherwise. He worked long hours, lived on snacks he bought at stores, and slept in his truck. He continued with these activities until approximately October 27, 1955. While he was thus engaged in Kern County, the board mailed to his resident address a notice dated September 23, 1955, referring to the postponement of the previous induction order, and directing him to report for induction on October 6. As appellant was still absent in Kern County, his mother opened the mail,[4] and on October 7 she wrote the board the letter referred to in footnote 2, above, saying that her son "has been north around Bakersfield for the past 5 days and I cannot contact him as he is working in the fields with his bees and sleeping in a bedroll on his truck at nite."

2. On October 7, 1955, when appellant's mother opened mail hereafter mentioned, indicating that the board had not granted the 60 day extension, she wrote the board stating that the Chairman "granted me a 60 day extension to November 8th so I thot, but now I have discovered that Mr. Imbach only meant that he hoped to grant me this extension but actually did not." October 10, following, upon receipt of this letter, the clerk of the board addressed a letter to appellant referring to this letter of his mother, saying: "You undoubtedly misunderstood Mr. Imbach who has informed us that he told you he would recommend from a 30 to 60 day postponement." After stating that a postponement could be granted only by a director of Selective Service, and that the Board had at no time ever notified of a postponement until November, the letter said: "Because you misunderstood, this Local Board is issuing a final directive for you to report at 7:45 A.M. Thursday, October 13, 1955. * * *" It is conceded that appellant knew nothing of this letter until after October 27.

3. The record defies any attempt to fix the precise date when appellant made this move. It was before he got any more notices from the board.

4. A memorandum in the files of the board dated October 5, 1955, recited that the Chairman of the board had called the office and stated that "The Graves family had been on his neck all day and night, wanting a postponement of induction again."

Following the board's receipt of that letter, it sent to appellant at his residence address the letter of October 10, 1955, previously referred to, stating: "Because you misunderstood, this Local Board is issuing a final directive for you to report at 7:45 A.M. Thursday, October 13, 1955 at the Metropolitan Coach Lines, 549 Third Street, San Bernardino, for forwarding to the induction station in Los Angeles." It is for failure thus to report as directed in that letter that appellant was indicted.

But this letter did not reach the appellant. He was still away. On the following day, October 11, appellant's mother, who had opened the letter, again wrote the board stating that her son was in the fields in Kern County and that she expected him to be through with his work by October 27; that it was impossible for her to contact him. On October 27, when appellant did return home he learned for the first time of the notices to report on October 6 and again on October 13. He and his mother went to the board offices the following morning to inquire, as they testified, what he should now do, and they were informed that the case was out of the board's hands and that the appellant had been reported as a delinquent registrant.

The facts above related appear from the testimony of appellant and his mother. But they were not contradicted,[5] and we do not understand that the Government questions the fact that appellant had no knowledge either of the notice to report on October 6, or of that to report October 13, until after his return on October 27.[6]

■ We think that the Government's proof in this case falls short of showing that appellant *knowingly* failed and neglected to report for induction into the armed forces, as notified and ordered to do, that is to say, on October 13, 1955.

The sanctions of the Act are directed only against one "who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title * *."

"[T]he statute requires something more than mere failure, for the accused must 'knowingly fail or neglect to perform' a statutory duty." United States v. Hoffman, 2 Cir., 137 F.2d 416, 419. The court held that this language meant that the "usual criminal intent" must be proven.

In United States v. Chicago Express, 7 Cir., 235 F.2d 785, 786, the court was dealing with similar language stating: "Whoever knowingly violates any such regulation shall be fined not more than $1,000 or imprisoned not more than one year or both." The court said (at page 786): "By using the word 'knowingly' in [18 U.S.C.A.] § 835, we think Congress, while describing a state of mind essential for responsibility, removed violations of the relevant regulations from the classification familiarly known as offenses malum prohibitum, public welfare, and civil offenses." In thus indicating that such language carried a requirement of culpable intent as a necessary element of the offense, the court quoted from the language of the Court in Boyce Motor Lines v. United States, 342 U.S. 337, 342, 72 S.Ct. 329, 332, 96 L.Ed. 367. In the latter case the Court referred to a similar statute as requiring proof that the accused "willfully neglected to exercise its duty."

■ United States v. Hoffman, supra, dealt with a prosecution under the Selective Training and Service Act of 1940, the language of which is substantially identical with that of § 462 under which the present indictment was drawn. We think that the court there was correct in saying that the words "knowingly fail or neglect to perform", etc., required

---

5. The only witness who testified for the Government was an FBI agent who interviewed appellant on December 30, 1955. Appellant, he said, admitted that he had received orders to report, but he did not say when. He did tell the agents about his having been in another part of the State attending his bees.

6. The Government brief states: "Appellant received the Notice to Report for Induction approximately 14 days after the induction date of October 13, 1955."

proof of "the usual criminal intent." The proof is absent here, for there is no evidence that when the appellant failed to report on October 13, 1955, he knew that he had been ordered to do so. We think that our action here should be governed by what was said in Heikkinen v. United States, 78 S.Ct. 299, 302. In that case one of the counts of the indictment was laid under the provisions of an Act which provided punishment for any alien against whom an order of deportation was outstanding who "shall willfully fail or refuse to make timely application in good faith for travel or other documents necessary to his departure, * * *" Heikkinen, after he was ordered deported, failed to make any application for travel documents. The evidence showed that he did not do so because he had relied upon an Immigration inspector's letter to him stating that the officer was making arrangements to effect his deportation. Holding that the evidence was insufficient to convict, the Court said: "There can be no *willful* failure by a deportee, * * in the absence of evidence, or an inference permissible under the statute, of a 'bad purpose' or '[non-]justifiable excuse,' or the like."

We recognize that the word "knowingly" in the statute here involved may not be as strong a word as "willfully" used in the Heikkinen case, but the use of either of these words requires proof of culpable intent as pointed out in Boyce Motor Lines v. United States, supra.

In an effort to sustain the judgment the Government argues that under the Selective Service regulations appellant, as a registrant, owed a continuing duty to report from day to day to his local board for induction.[7] The Government in its brief states that although actual knowledge of an order to report for induction might be a requisite to criminal prosecution, yet since the regulations provide this continuing duty to report, "once appellant had actual knowledge of his duty, and thereafter knowingly failed to report, the offense was complete."

Apparently the argument is that because of this continuing duty the appellant was guilty of the offense charged after he returned home on October 27, 1955. We think there are two reasons why the Government's contention cannot prevail. The first is that there is no showing whatever that appellant when he thus returned home knowingly failed or neglected or refused to perform any "continuing duty". All of the testimony as to what then happened is confirmed by the Selective Service records themselves. Registrant's mother testified that when the son returned from Kern County and read his mail the two of them went together to the draft board to inquire what the appellant should now do. She testified that both of them went into the office together and asked the secretaries there what they should do; that the office personnel told them that there was nothing they could do because the file and the case was in the hands of the FBI and that all that could be done was to wait around until the FBI came to pick up the appellant. Accordingly appellant and his mother returned home. Subsequently on December 30, the FBI officers came and interviewed the appellant in the manner previously stated. On cross-examination Mrs. Graves testified that on the occasion of the trip to the draft board office the persons in the office said the case was out of their hands; that they could not ad-

---

7. The regulations referred to are as follows:

"32 C.F.R. § 1632.14(a): When the local board mails to a registrant an Order to Report for Induction * * *, it shall be the duty of the registrant to report for induction at the time and place fixed in such order * * * Regardless of the time when or the circumstances under which a registrant fails to report for induction when it is his duty to do so, it shall thereafter be his continuing duty from day to day to report for induction to his local board and to each local board whose area he enters or in whose area he remains.

"32 C.F.R., § 1642.2: Continuing duty. When it becomes the duty of a registrant or other person to perform an act * *, the duty or obligation shall be a continuing duty or obligation from day to day * * *"

vise anything, but that it was now up to the FBI to pick up her son and that they should just wait until the FBI came around.

The appellant testified that although he drove his mother to the draft board office, he sat in the car while she went in; that on her return to the car she told him that he was to wait for the FBI until they came and picked him up. This is consistent with a notation in the records of the local board under date of October 28, 1955, stating that when Mrs. Graves came to the board office that morning, "She was informed that the case was entirely out of the Board's hands and that her son already had been reported as a delinquent registrant."

It is of no significance whether registrant actually went into the board's office with his mother, as she testified, or whether he waited in the car until she returned. The record shows that throughout the period that appellant had been dealing with the board, the mother had been extraordinarily active in his behalf and it must have been understood that she was making inquiry for him. There is no doubt as to what advice she received at the board office or that she informed appellant thereof. It is clear that the report discloses that on this occasion an inquiry as to what registrant should now do was made at the board office and that persons there in charge advised that there was nothing for him to do except to wait for the FBI. When the appellant proceeded to follow that advice, it cannot be said that he then knowingly failed, neglected or refused to perform a so-called continuing duty to report.

We think that the only possible construction of the evidence is that appellant was justified in understanding, from what he learned from the board's office, that nothing he could do now would change his situation, and, by the same token, that nothing further was now required of him. He was as justified in that understanding as was Heikkinen in relying on what the Immigration inspector told him.

The second reason why this conviction cannot be sustained on the theory of a violation of some continuing duty is that the indictment makes no such charge. The charge is that appellant "then and there knowingly failed and neglected to report for induction into the armed forces of the United States as so notified and ordered to do." The indictment alleges that he was "so notified and ordered to do" by a notice and order "given to him to report for induction into the armed forces of the United States of America on October 13, 1955, in San Bernardino County, California."

Unquestionably the regulations make it the continuing duty of a registrant to report for induction. They also set forth many other duties. But failure to perform any stated duty is not a crime unless the registrant *knowingly* fails or neglects or refuses to perform it. A person charged with a knowing failure to perform any such duty must be informed which particular duty he disobeyed, and when he did it. The indictment here was properly specific. It did not open the case for proof of violation of duties not specified, no matter how clearly spelled out in the regulations. The appellant was charged with knowingly failing and neglecting to report for induction on October 13, 1955, pursuant to a notice to report on that date. He cannot be convicted on this indictment of a failure or neglect to perform a different duty at a different time. Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644.

There is evidence in the record to show that appellant was far from eager to serve in the armed forces. He continued to seek exemptions and deferments even after his final appeal was rejected. He exchanged bitter words with the FBI agents when they interviewed him on December 30, 1955; when they asked if he was then willing to report for induction he said they "had a gun in his back", and that he would not be willing to report without a warrant for his arrest.

During this interview the FBI officers expressly disclaimed any jurisdiction to

classify him, or to give him orders. The apparently heated argument he had with them would serve to produce evidence of his general attitude toward military service, but his then hostile attitude was not a refusal to report for induction, for he had no reason to believe that he was then under any order or duty to report, or that the FBI were there for any purpose other than to gather evidence as to his past conduct.

The Government places reliance upon Silverman v. United States, 8 Cir., 220 F.2d 36. While some reference is there made to a registrant's continuing duty to report, it is plain that the court assumed that the evidence was sufficient to warrant the jury in finding that the appellant there actually received the notice to report for induction. In the light of the decision in Heikkinen v. United States, supra, it is plain that the Silverman case is inapposite here.

We hold that the evidence was insufficient to sustain the conviction and the judgment is reversed.