**UNITED STATES of America,**
**Appellee,**

v.

**Frank SQUIRES, Appellant.**
**No. 604, Docket 35629.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 27, 1971.

Decided March 25, 1971.

Moore, Circuit Judge, filed concurring opinion.

Peter L. Truebner, Peter F. Rient, Asst. U. S. Attys., Whitney North Seymour, Jr., U. S. Atty., for appellee.

Robert Hermann, Milton Adler, New York City, for appellant.

Before WATERMAN, MOORE and FEINBERG, Circuit Judges.

WATERMAN, Circuit Judge:

Appellant Squires was indicted on two counts. The first charged a violation of 18 U.S.C. §§ 922(a) (6) [1] and 924,[2] and the second charged a violation of 18 U.S.C. §§ 922(h) [3] and 924. The jury below returned a verdict of guilty on the first count and a verdict of not guilty on the second count. Judgment was entered upon the guilty verdict and Squires was sentenced to 18 months in prison. This appeal requires us to define the word "knowingly" within the meaning of 18 U.S.C. § 922(a) (6) and to apply the definition in determining whether certain jury instructions were erroneous and whether others should have been given. For reasons subsequently set forth we reverse the judgment of guilty below and remand for a new trial on the first count.

The following outline of the facts appears to be undisputed. On December 20, 1968, one John Tortora appeared at Ed Agramonte, Inc., a sporting goods store in Yonkers, New York, which was licensed by the Government to sell firearms. Tortora ordered a .30 caliber carbine, asked to have an engraved nameplate bearing his son's name placed on the gun, made a deposit on the purchase price, and agreed to return a few days later in order to take delivery. Appellant Squires, who was known to Mr. Agramonte as the operator of a nearby furniture store, accompanied Tortora on this occasion.

On December 24, 1968, Tortora returned to the store to pick up the gun, but was told that before he could take it he would have to produce a driver's license or other suitable identification to be listed on a federal form. Tortora stated that he did not have such identification but would return later, and he left without the gun. A few hours later Tortora, accompanied by Squires, returned to the store. Squires informed Agramonte that he was there to pick up Tortora's gun. Agramonte told Squires that he would have to present proper identification and was required to fill out certain necessary government forms. Agramonte then referred Squires and Tortora to his wife who was acting as bookkeeper.

Squires and Tortora explained the situation to Mrs. Agramonte who, on the basis of information listed on Squires's automobile registration, then drew up a new bill of sale and a Form 4473 [4] re-

1. § 922(a) (6) provides:
   (a) It shall be unlawful—
   *     *     *     *     *
   (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

2. § 924(a) provides in pertinent part:
   Whoever violates any provision of this chapter * * * shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

3. § 922(h) provides in pertinent part:
   (h) It shall be unlawful for any person—
   (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
   *     *     *     *     *
   to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

4. A facsimile of the form signed by the appellant, the Department of Treasury—Internal Revenue Service Form 4473, captioned "Firearms Transaction Rec-

flecting a sale to Squires rather than to Tortora. Squires then signed the Form 4473 in the space designated "transferee's signature," located immediately below the statement, "I certify that I am not prohibited by the provisions of Chapter 44 of Title 18, United States Code, or Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 (Public Law 90–351, 82 Stat. 197, as amended, 18 U.S.C., Appendix) from receiving a firearm in interstate or foreign commerce." The balance due on the gun was paid, and Mrs. Agramonte delivered the gun. The Government does not appear to contend that the gun was purchased otherwise than as a Christmas present for Tortora's son, or that Squires's participation in the transaction involved more than a personal favor to Tortora.

The only factual dispute centers around the signing of the Form 4473 by Squires. Mrs. Agramonte testified that, after she had prepared the form, she told Squires to read it and sign it. However, she could not remember whether she explained to him, as later became her custom, that the form was for the purpose of keeping guns out of the hands of drug users and criminals. Squires testified that Mrs. Agramonte merely told him to sign the form and that his understanding was that the completion of the form by filling in the required information was only a bookkeeping formality. He further testified that he did not read the form because the store was crowded and he did not wish to delay the customers waiting behind him. He denied any knowledge, at that time, of the prohibi-

tions of the statutes cited in the certification statement.

It was stipulated that Squires had been convicted on a guilty plea in August 1964 of conspiring to violate 18 U.S.C. §§ 2314 and 2315 and it was also stipulated that the rifle being purchased at the Agramonte store had been transported in interstate commerce. Because of this 1964 conviction, Squires concedes that his certification on the Form 4473 which he signed was false.

■ At trial defense counsel requested a jury instruction to the effect that the jury could consider whether Form 4473 was reasonably designed to give a person adequate warning as to the gravamen of the certification. The denial of this request is assigned as error. In addition, when it became apparent that a government-submitted charge on recklessness was about to be accepted, defense counsel submitted a less stringent instruction on the issue and this substituted request was substantially accepted by the court.[5] This instruction is now assigned as error. Although the instruction is almost verbatim the instruction submitted by the defense, we find no waiver of Squires's claims of error for the defense had clearly objected to any instruction on the issue of recklessness. Furthermore, the only significant difference between the prosecution request with reference to recklessness and the defense request on that issue is in tone, so that any error was not invited by the substitution of the defense submission for the prosecution's request. Although technically it would have been more appropriate for the defense to have made a specific

ord," is attached as an appendix to Judge Moore's concurring opinion.

The Gun Control Act became effective on December 16, 1968, only eight days before the transaction in question. Section 105 of Pub.L. 90–618. Thus, if Squires had signed the certification nine days earlier, he would not have been making a false statement.

5. The judge instructed:
Thus, if you find:
(1) That the defendant was shown Form 4473;

(2) That he was told to read it before signing;

(3) That had he read the form he would have known he was prohibited from receiving the firearm; and

(4) His signing the form without reading it was so unjustified by the circumstances surrounding the transaction that it was reckless conduct—

—you may find that the defendant acted wilfully and knowingly, even though he was actually ignorant of the prohibition of this statute.

reservation of the issue, sufficient notice of the objection was given to the court below, and, in any event, we find the instruction to have been plain error. Fed.R.Crim.P. 52(b).

Defense counsel, for the purpose of highlighting the lack of clarity in the form which Squires signed, attempted unsuccessfully to introduce into evidence a copy of Revised Form 4473 which was promulgated six months [6] after the 1968 Gun Control Act went into effect. Although the admissibility of the revised form is not urged on appeal, we find the revised form very instructive on the question of notice and on other issues in this case and, therefore, we set forth its certification provision in the margin.[7]

As both assignments of error hinge on the proper definition of "knowingly" within the meaning of the statute, we turn first for enlightenment to the legislative history of the statute. The committee reports state that § 922(a) (6) "prohibits the making of false statements or the use of any deceitful practice (*both knowingly*) by a person in connection with the acquisition or attempted acquisition of a firearm." [8] This passage clearly indicates a legislative intent to make knowledge a key element of the offense prohibited by the statute, but, although it may intimate that the word "knowingly" is to be used in its normal sense, it does not foreclose more sophisticated definitions. The Supreme Court, faced with a similar lack of legislative definition, adopted the Model Penal Code formulation:

When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if

a person is aware of a high probability of its existence, unless he actually believes that it does not exist.

Leary v. United States, 395 U.S. 6, 46 n. 93, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), citing Model Penal Code 27 (A.L.I. Prop.Official Draft, 1962). This formulation is merely a more comprehensive version of the lay definition of "knowledge" in that it recognizes that there are many facts which one does not "know with certainty," and it comports with the use of "knowingly" in other criminal statutes. See, e. g., Pauldino v. United States, 379 F.2d 170 (10 Cir. 1967); Freije v. United States, 386 F.2d 408 (1 Cir. 1967), on appeal after remand, 408 F.2d 100 (1 Cir.), cert. denied, Saia v. United States, 396 U.S. 859, 90 S.Ct. 129, 24 L.Ed.2d 111 (1969); Popeko v. United States, 294 F.2d 168, 170 (5 Cir. 1961), cert. denied, 374 U.S. 835, 83 S.Ct. 1883, 10 L.Ed.2d 1056 (1963); United States v. Hines, 256 F.2d 561, 563–564 (2 Cir. 1958); Graves v. United States, 252 F.2d 878 (9 Cir. 1958); Bateman v. United States, 212 F.2d 61, 70 and n. 6 (9 Cir. 1954). The cases cited by the Government that deal with the enforcement of the Securities laws are distinguishable. In those areas of fiduciary responsibility the persons issuing statements are under an affirmative duty to investigate, and it is entirely appropriate to include "should have known" within the definition of "know." We find those cases inapplicable here and we adopt the Model Penal Code formulation for the purposes of the statutes at issue in this case.

Inasmuch as knowledge is a specific element of the crime proscribed

---

6. See *supra* note 4.

7. I certify that: (1) I am neither under indictment for, nor have I been convicted of, a crime punishable by imprisonment for a term exceeding one year; (2) I am not a fugitive from justice; (3) I am not an unlawful user of, or addicted to marihuana or a depressant, stimulant or narcotic drug; (4) I have not been adjudicated mentally defective and I have never been committed to a mental institution; (5) I have not been

discharged from the Armed Forces under dishonorable conditions; (6) I am not an alien illegally in the United States; and (7) I am not a person who, having been a citizen of the United States, has renounced his citizenship.

8. Senate Rep.No.1501, 90th Cong., 2d Sess. 33 (1968); House Rep.No.1577, 90th Cong., 2d Sess. 13 (1968) (emphasis added). The reports are reproduced in 1968 U.S.Code Cong. & Admin.News, p. 4410.

by § 922(a) (6), the maxim that "ignorance of the law is no defense" has no relevance here with reference to Squires's purported ignorance of the provisions of Chapter 44 of Title 18 and of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968. "Ignorance * * as to a matter of law is a defense if * * * the ignorance negatives the * * * knowledge * * * required to establish a material element of the offense. * * * *" Model Penal Code § 2.04(1) (a) (A.L.I.Prop.Official Draft, 1962); see G. Williams, Criminal Law: The General Part 160 (2d ed. 1961). However, whenever a defense of ignorance of the law or of ignorance of fact is claimed, it is recognized that one may not deliberately close his eyes to what otherwise would have been obvious to him. See, e. g., Greenway v. Maryland, 8 Md.App. 194, 259 A.2d 89, 91–92 (1969); G. Williams, *supra* at 159.

■■ Turning from general principles to the present case, we find that the trial judge instructed the jury: "Thus, if you find * * * that had [the defendant Squires] read the form he would have known that he was prohibited from receiving the firearm, * * * you may find that the defendant acted wilfully and knowingly, even though he was actually ignorant of the prohibition of this statute." The primary error in this instruction is that it is internally inconsistent. If Squires "were actually ignorant of the prohibition of [the statutes cited in the form]," it should be evident that "had he read the form" he would *not* "have known he was prohibited from receiving the firearm." [9] The instruction is also erroneous because it fails to differentiate between the two types of ignorance which Squires claimed to have insulated him from being guilty of "knowingly" making the false statement he concedes he made—his ignorance of what he was signing because of his purported failure to read the form, an ignorance of fact; and his ignorance as to what was prohibited by the cited statutes, an ignorance of the law.[10] In order to convict Squires under § 922(a) (6), it was necessary for the jury to find either (1) that Squires had read the form and was "aware of a high probability" that he was prohibited by the cited statutes from receiving a firearm in interstate commerce, or (2) that he deliberately[11] avoided reading the form and that, if he had read it, he would have been "aware of a high probability" that he was prohibited by the cited statutes from receiving a firearm in interstate commerce. The trial court's instructions were clearly insufficient on this point.[12]

9. This same inconsistency is found in the prosecution's requested instruction.

10. It appears that this latter problem, ignorance of the law, will be in large part eliminated from future prosecutions by the use by transferors of Revised Form 4473. See *supra* note 7 and accompanying text.

11. We consider that there is sufficient evidence that an accused transferee deliberately failed to read the form if the transferee's attention is unambiguously alerted, either by the transferor or by the form, to the necessity of reading the form before signing it, and if, despite this warning, the transferee neglects to read the form. On this point, as the trial judge instructed, all the circumstances surrounding the transaction are to be considered in determining whether the transferee was adequately alerted to the necessity of reading the form.

12. The case of United States v. Abrams, 427 F.2d 86 (2 Cir.), cert. denied, 400 U.S. 832, 91 S.Ct. 64, 27 L.Ed.2d 63 (1970), cited by the Government, supports our decision in the present case. In *Abrams* the court stated, with reference to a conviction for making a false statement in an affidavit requesting a stay in immigration proceedings, "the jury could have found from the evidence that appellant acted with reckless disregard of whether the statements made were true *and with a conscious purpose to avoid learning the truth.*" 427 F.2d at 91 (emphasis added). In the instant case the error in the court's instructions lies in the failure to require "conscious avoidance" by Squires both as to what the form said and as to the import of the cited statutes in relation to his certification.

Since Squires's knowledge of the prohibitions of the cited statutes was a crucial issue at trial, counsel's request to have the jurors instructed that the wording of Form 4473 might be considered by them in determining whether Squires had the requisite knowledge should have been granted. Although the court did instruct the jury to consider "the circumstances surrounding the transaction," it appears that this instruction was principally submitted in connection with instructions as to whether Squires had acted "recklessly" in failing to read the form. While we do not decide that the initial version of Form 4473 is inadequate to support a conviction under § 922(a) (6) of all transferees who were prohibited by the cited statutes from receiving firearms in interstate commerce, we do believe that when the Government adopted the form it imposed upon itself an unusually difficult burden of proof as to a signer's knowledge of his criminality. It can safely be said that many lawyers would not have understood, without the benefit of research, the import in the original form of the certification provision. To require a layman, without any explanation, to sign such a certification at his peril appears to us to be quite unrealistic. While it is possible that a defendant may be shown to have sufficient familiarity with the cited statutes, all that we are saying here is that the obscure language of the certification provision was highly relevant to Squires's knowledge, and that the trial court should have so instructed the jury.

In conclusion, the errors below resulted primarily from the sincere efforts of a distinguished judge to deal with the unnecessary issues introduced by the inadequate drafting of the original Form 4473. Although ignorance of the law may conceivably arise as an issue even with the revised form, we expect that the revised form will eliminate much of the difficulty in the prosecution of cases under § 922(a) (6). The judgment of conviction is reversed, and the case is remanded for retrial on the first count.

MOORE, Circuit Judge (concurring):

I concur in the reversal of the judgment of conviction but for reasons differing somewhat from those expressed in the majority opinion. My problem is how to reconcile my own belief that the defendant did not "knowingly" commit the crime (1) with the trial court's charge correctly (in my opinion) defining "knowingly" and (2) without usurping the fact-finding function of the jury.

Finding no errors of commission, I am quite convinced that an error of omission may well have been of vital importance to the jury's deliberations, namely, the failure to direct the jury to consider whether Form 4473 was reasonably designed to give a person adequate warning as to the representations as to which he was certifying.

The government's case depends almost entirely on the form which Squires signed. The first page of the form (Appendix hereto) is relied on by the government to establish notice. The only place for the transferee's (the purchaser's) signature is in a section entitled "Section B—Statement of Transferee" and under a paragraph reading as follows:

"I certify that I am not prohibited by the provisions of Chapter 44 of Title 18, United States Code, or Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 (Public Law 90–351, as amended, 18 U.S.C., Appendix) from receiving a firearm in interstate or foreign commerce."

A purchaser, while in the process of transacting a purchase and certainly under the circumstances attendant to the purchase here, could hardly be expected to hire a lawyer or go to a law library to ascertain the prohibitions of the statute. Moreover, the "Notice to Transferees" which contains the prohibitions is relegated to a position at the bottom of the form and far below any place for a transferee's (purchaser's) signature which might well escape his attention. Normally, a subscriber certifies or attests to that which appears above his

signature—not to a paragraph of somewhat fine print at the bottom of the page below all signatures. Thus, the situation here is not unlike the "fine print" cases frequently involving passenger tickets, baggage claim checks, bills of lading and the like.

Since Congress made "knowingly" an essential element of the crime, I, therefore, would be better satisfied of Squires' guilt had the element of notice been stressed in the instructions insofar as this particular form and its format were concerned.

APPENDIX

| Form **4473** (December 1968) | Department of the Treasury—Internal Revenue Service<br>Alcohol and Tobacco Tax Division<br>**FIREARMS TRANSACTION RECORD** | TRANSFEROR TRANS-ACTION NUMBER<br>M8380 |
|---|---|---|

NOTE: Please read and carefully follow the instructions on the back before making any entry on the form.

**SECTION A—DESCRIPTION OF FIREARM**

| 1. TYPE (Pistol, rifle, etc.)<br>Rifle | 2. MODEL<br>M 1 Carbine | 3. CALIBER OR GAUGE<br>30 Cal | 4. SERIAL NUMBER<br>33 3 7 |
|---|---|---|---|

5. MANUFACTURER (And importer, if any)  Fairfield

**SECTION B—STATEMENT OF TRANSFEREE**

| 6. TRANSFEREE'S NAME<br>Frank Squires | 7. HEIGHT<br>5 - 11 | 8. WEIGHT<br>180 | 9. RACE<br>W |
|---|---|---|---|

| 10. ADDRESS (Number, street, city, State, ZIP Code)<br>21 Riverdale Ave<br>Yonkers | 11. DATE OF BIRTH<br>9-2-39 | 12. PLACE OF BIRTH<br>Worcester Mass |
|---|---|---|

13. Transferee is to execute this item for an over-the-counter transaction if he resides in the State in which the transferor's business is located.

I certify that I am not prohibited by the provisions of Chapter 44 of Title 18, United States Code, or Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 (Public Law 90-351, as amended, 18 U.S.C., Appendix) from receiving a firearm in interstate or foreign commerce.

TRANSFEREE'S SIGNATURE ► Frank Squires    DATE 12/24/68

14. Transferee is to execute this item if (a) he does not reside in the State in which the transferor's business is located, or (b) the transaction is not over-the-counter.

Subject to penalties provided by law, I swear that, in the case of any firearm other than a shotgun or a rifle, I am 21 years or more of age, or that, in the case of a shotgun or a rifle, I am 18 years or more of age; that I am not prohibited by the provisions of Chapter 44 of Title 18, United States Code, from receiving a firearm in interstate or foreign commerce, and that my receipt of this firearm will not be in violation of any statute of the State and published ordinance applicable to the locality in which I reside. Further, the true title, name, and address of the principal law enforcement officer of the locality to which the firearm will be delivered are:

------------------------------- (Title)      (Name)

------------------------------- (Address)

TRANSFEREE'S SIGNATURE ►      DATE

**SECTION C—VERIFICATION OF IDENTITY**

15. I certify that the person described in Section B has signed Item 14 in my presence, and ☐ is known by me, or ☐ has identified himself to me in the following manner:

15a. TYPE OF IDENTIFICATION (Driver's license, etc.) Driver Reg Registration

15b. NUMBER ON IDENTIFICATION 755826 Aug 2 68

16. VERIFYING OFFICIAL'S SIGNATURE ►

16a. DATE

16b. VERIFYING OFFICIAL'S TITLE

16c. LOCATION OF OFFICE (City and State)

**SECTION D—STATEMENT OF TRANSFEROR**

On the basis of (1) the statements in Section B, (2) the verification of identity in Section C, and (3) the information in the current list of Published Ordinances, it is my belief that the person named in Section B is lawfully entitled to purchase or otherwise receive the firearm described in Section A.

17. TRANSFEROR'S SIGNATURE ►

17a. TRANSFEROR'S TITLE

17b. TRANSACTION DATE 12/24/68

NOTICE TO TRANSFEREES: The following persons are prohibited from receiving a firearm in interstate or foreign commerce under 18 U.S.C., Chapter 44 and Title VII of Public Law 90-351, as amended, (18 U.S.C., Appendix): (1) fugitives from justice (any crime); (2) persons under indictment for, or who have been convicted of, a crime punishable for a term exceeding 1 year; (3) narcotic addicts or drug users; (4) persons adjudicated as mental defectives or mentally incompetent, or who have been committed to any mental institution; (5) veterans discharged under dishonorable conditions; (6) persons who have renounced U.S. Citizenship; (7) aliens illegally or unlawfully in the U.S.; and (8) persons under 21 years of age in the case of any firearm other than a shotgun or a rifle and under 18 years of age in the case of a shotgun or a rifle.

Department of the Treasury—Internal Revenue Service    **EXHIBIT 1**    Form 4473 (12-68)
[A3925]