**UNITED STATES of America,**
**Appellee,**

v.

**Carlos JOLY, Appellant.**

**No. 775, Docket 73–2681.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 15, 1974.

Decided March 12, 1974.

John E. Wehrum, Jr., Asst. U. S. Atty. (Edward J. Boyd, V., U. S. Atty., E. D. N. Y., L. Kevin Sheridan, Asst. U. S. Atty., on the brief), for appellee.

E. Thomas Boyle, New York City, (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for appellant.

Before FEINBERG and OAKES, Circuit Judges, and TYLER, District Judge.*

FEINBERG, Circuit Judge:

Carlos Joly appeals from a conviction after a jury trial in the United States District Court for the Eastern District of New York of three counts of importing cocaine and possessing it illegally. Judge Jack B. Weinstein sentenced Joly as a youth offender, 18 U.S.C. § 1510(b), to an indefinite term of four years on each count, to run concurrently.[1] The only issues on appeal concern

---

\* Of the United States District Court for the Southern District of New York, sitting by designation.

1. The three counts were: importation of cocaine (21 U.S.C. §§ 952(a), 960(a)(1)); pos-session of cocaine not entered in the manifest on board an aircraft (21 U.S.C. §§ 955, 960(a)(2)); and possession of cocaine with intent to distribute (21 U.S.C. § 841(a)(1)).

the judge's charge. For reasons set forth below, we affirm.

There is no need to relate the facts of the case in great detail since Joly does not claim that the evidence was insufficient or that the cocaine was found on his person as the result of an improper search. Briefly, Joly was caught in a customs search at John F. Kennedy International Airport after he left a plane, which had just arrived from Panama City, Panama. As Joly approached the inspection belt, his furtive actions and a "bulge" in his waistline aroused the suspicions of an inspector. A search revealed a brown paper bag, containing about 330 grams of cocaine. Appellant's story at trial was that a man on the plane named Miguel had given him the package and promised him $100 if he took it through customs and returned it "outside the airport." Joly maintained that he did not know the package contained cocaine and that when he had asked "Miguel" what was in the package, Miguel had told him it was nothing to be concerned about.

The extent of Joly's knowledge was the only significant factual issue at trial. There was no direct evidence that Joly knew he was carrying cocaine concealed under his belt, although an agent testified that Joly admitted that "he thought he was doing something wrong but he really didn't know what it was." "Miguel" did not appear,[2] and Joly insisted that he did not know what was in the package. The Government relied heavily on the concealment of the package that held the cocaine, Joly's possession of it, and the unbelievability of Joly's story. By its verdict, the jury rejected Joly's claim of ignorance. The question before us is whether it did so on proper instructions.

In his charge to the jury, Judge Weinstein correctly emphasized the issue of appellant's "guilty knowledge." The judge said:

It is obvious that as to all three counts, the critical question is whether the defendant, Mr. Joly, knew he had cocaine. And actual knowledge that the defendant was bringing and importing cocaine into the country is an essential element of each of the offenses charged.

You may not find the defendant guilty of any count unless you find beyond a reasonable doubt that he knew he was importing or bringing cocaine into the country. The fact of knowledge may be established by direct or circumstantial evidence just as any other fact in the case. Knowledge may be proven by the defendant's conduct since we have no way of looking into a person's mind directly.

The defendant has flatly testified that he had no such knowledge. Now, in this connection bear in mind that one may not willfully and intentionally remain ignorant of a fact, important and material to his conduct, in order to escape the consequences of the criminal law.

If you find from all the evidence beyond a reasonable doubt that the defendant believed that he had cocaine and deliberately and consciously tried to avoid learning that there was cocaine in the package he was carrying in order to be able to say, should he be apprehended, that he did not know, you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge.

In other words, you may find the defendant acted knowingly if you find that either he actually knew he had cocaine or that he deliberately closed his eyes to what he had every reason to believe was the fact. I should like to emphasize, ladies and gentlemen, that the requisite knowledge cannot be established by demonstrating merely negligence or even foolishness on the part of the defendant.

---

2. In an effort to check out appellant's story, a Special Agent of the Drug Enforcement Administration obtained all of the Customs declarations for Joly's flight. Although one did bear the name "Miguel," the indicated birth date of the declarant revealed that he was at least 20 years older than the man described by appellant.

No objection was taken to these instructions. Appellant claims, nonetheless, that the charge was plain error because "it relieved the jury of the obligation of affirmatively finding knowledge" and allowed it to convict upon a finding of "ignorance"—thus undermining "the deliberative process on an essential element of the crime charged." [3] As we have upon a number of occasions expressly approved this type of charge,[4] the point would ordinarily require little discussion. However, appellant's refinement of his argument and the Government's response to it require further comment.

■ Appellant concedes that "studied ignorance" of a fact may, under decisions of the Supreme Court and of this court, constitute an awareness of so high a probability of the existence of the fact as to justify the inference of knowledge of it. See, e. g., Turner v. United States, 396 U.S. 398, 416 & n. 29, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); Leary v. United States, 395 U.S. 6, 46 n. 93, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); United States v. Jacobs, 475 F.2d 270, 287–288 (2d Cir. 1973), cert. denied, sub. nom., Thaler v. United States, 414 U.S. 821, 94 S.Ct. 131, 38 L.Ed.2d 53 and Lavelle v. United States, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53; United States v. Squires, 440 F.2d 859, 863–864 (2d Cir. 1971). But appellant distinguishes these cases because in each there were only two alternative possibilities, whereas in his there are many. Thus, in both *Leary* and *Turner*, where an issue was defendant's knowledge of importation of the drug, the substance which defendant admittedly possessed was either imported or it was not. The Court in *Turner* reasoned that—given the fact that little or no heroin is made in the United States—one dealing in it is aware of the high probability of its

foreign origin. 396 U.S. at 415–416, 90 S.Ct. 642. In this context, says appellant, a reckless ignoring of the source does not undermine the validity of an inference of knowledge of importation because a "studied ignorance," id. at 417, 90 S.Ct. 642, of the illegal (and only other) alternative does not preclude awareness of the great likelihood that the drug was imported. Appellant applies the same analysis to possession of stolen goods (the goods are either stolen or not), United States v. Jacobs, supra, and to making false statements (the assertions are either true or false). United States v. Squires, supra. But, contends appellant, the inference of knowledge of the crucial fact disappears when the alternatives multiply, as in this case, where appellant could well, in his ignorance, have been carrying gold, watches, jewelry or myriad other items.

■ Before we examine appellant's argument, we must consider the Government's first response to it: that two prior decisions of ours, on all fours with this one, foreclose the issue. The cases relied upon were both affirmances from the bench by different panels of this court.[5] Appellant discounts their precedential value entirely, relying on our recently adopted local rule § 0.23, which provides as follows:

§ 0.23. *Dispositions In Open Court Or By Summary Order:*

The demands of an expanding caseload require the court to be ever conscious of the need to utilize judicial time effectively. Accordingly, in those cases in which decision is unanimous and each judge of the panel believes that no jurisprudential purpose would be served by a written opinion, disposition will be made in open court or by summary order.

---

3. Brief for appellant at 17, 19.

4. See, e. g., United States v. Sarantos, 455 F.2d 877, 880–881 (2d Cir. 1972); United States v. Abrams, 427 F.2d 86, 91 (2d Cir.), cert. denied, 400 U.S. 832, 91 S.Ct. 64, 27 L. Ed.2d 63 (1970).

5. United States v. DeMarin, aff'd in open court, Nov. 28, 1973, 2 Cir., 486 F.2d 1397, and United States v. Garcia, aff'd in open court, Nov. 17, 1972, 2 Cir., 468 F.2d 632.

Where a decision is rendered from the bench, the court may deliver a brief oral statement. Where disposition is by summary order, the court may append a brief written statement to that order. Since these statements do not constitute formal opinions of the court and are unreported and not uniformly available to all parties, they shall not be cited or otherwise used in unrelated cases before this or any other court.[6]

We believe that appellant is wholly correct on this point. Although the rule refers to "statements" rather than decisions, its clear intent—contrary to the interpretation urged upon us by the Government—is that the decisions themselves shall also have no effect as stare decisis. The reasons for this new local rule are obvious. Affirmances from the bench occur only when the panel is agreed that the result is clear and that a written opinion would have no real value to the parties, or to others, as a clarification of law or as a precedent. Consequently, use of an oral affirmance as a precedent is inconsistent with the assumption upon which the affirmance was rendered. Moreover, in many instances, it is impossible to be sure of the basis of an affirmance; e. g., was a charge unobjected to below correct or was the error merely not "plain"? Even more important, any rule that accorded precedential value to the actual decisions, although not to any accompanying statements, would create severe problems of "secret law." While the Government and, to a lesser extent, Legal Aid would know of these decisions, many other attorneys and their clients would not.[7] This consideration is actually referred to in the rule, which points out that the statements on summary dispositions, whether oral or by written order, "are . . . not uniformly available to all parties." In addition, even if counsel for both sides are aware of a particular summary affirmance, they will not necessarily have equal access to the briefs and the trial record, which alone would reveal what issues were raised in the absence of a plenary opinion.[8] Because of these compelling considerations, we are not bound by our prior oral affirmances, supra note 5.[9]

Turning now to the merits of appellant's argument regarding the inference of knowledge, we think it ingenious but incorrect. If a person has cocaine in his possession, a legitimate inference arises that he knows what he possesses is cocaine. The reason is that it is more probable than not that a person knows what he has in his pocket or, as here, hidden under his belt. Of course, other evidence may weaken the inference. A denial of knowledge, a showing that someone else may have surreptitiously planted the cocaine where it was found, proof of lack of motive for possession—all are examples of mitigating evidence. Another example would be the showing made by Joly here that the cocaine was wrapped in a package small enough to contain jewelry or a watch or some other small, yet valuable item. But the legitimacy of the basic inference of knowledge does not automatically disappear because other evidence arguably points the opposite way. And the inference of knowledge certainly does not become invalid when it is buttressed by such additional evidence as a possibly manufactured story about

---

**6.** Rules of the United States Court of Appeals for the Second Circuit, supplementing Federal Rules of Appellate Procedure § 0.-23, effective Oct. 31, 1973.

**7.** The Federal Reporter merely lists these bench dispositions without giving any description of the issues raised.

**8.** Even if they did, as already indicated, that would not necessarily reveal the basis of the affirmance.

**9.** We note that the D.C.Circuit, confronted with these same problems, adopted the following amendment to its local rules on Apr. 19, 1972: "Unpublished orders including explanatory memoranda of this Court are not to be cited in briefs or memoranda of counsel as precedents." See 1B Moore's Federal Practice ¶ 0.402, n. 13 (2d ed. Supp.1973).

a non-appearing "Miguel," an admission of awareness of "doing something wrong" and a promise of payment of $100 for taking a small package past customs. In short, we believe that on these facts the jury was properly allowed to infer Joly's knowledge that he possessed cocaine.

 Appellant also attacks another portion of the charge, in which the judge stated:

> The law does not require certainty because only those who were present at an event can feel certain, and even they who are present can feel that something may have happened and they may be wrong about it. It is particularly true when the critical issue, as in this case, deals with the state of a person's mind which is not directly observable by anybody.

Again, trial counsel voiced no objection. Appellant now contends that this instruction left the jurors with the false impression that they could convict on less than certainty, in the face of the Supreme Court's admonition that "utmost certainty" is required. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969). While the challenged words might better have been omitted, we feel confident that the charge as a whole correctly conveyed the proper standard of proof to the jury. Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). The instruction on reasonable doubt,[10] which closely preceded the comments at issue, was patterned on a charge expressly approved by both the Supreme Court and this circuit. *Holland*, supra, 348 U.S. at 140, 75 S.Ct. 127; United States v. Hart, 407 F.2d 1087, 1091 (2d Cir.), cert. denied, 395 U.S. 916, 89 S.Ct.

1766, 23 L.Ed.2d 231 (1969). The judge's afterthought on certainty did not conflict with the basic instruction on reasonable doubt in such a way as to render the overall charge fatally inconsistent. Cf. *Squires,* supra, 440 F.2d at 864. Moreover, even assuming that the court's remarks on certainty were improper, they did not constitute plain error. Cf. United States v. Byrd, 352 F.2d 570, 575–576 (2d Cir. 1965). This being the case, we affirm the decision below.

---

10. The court stated:

> A defendant does not have to prove his innocence. A defendant need not submit any evidence at all. On the contrary, he is presumed to be innocent. The burden of proof beyond a reasonable doubt lies with the Government and continues throughout the trial.

> A reasonable doubt means a doubt sufficient to cause a prudent person to hesitate to act in the most important affairs of his or her life. Finding a citizen to be guilty of a crime and subjecting him to criminal penalties is a very serious matter. You will consider this fact in deciding whether or not you have a reasonable doubt.