**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronnie MOSER and Carl Mullins,
Defendants-Appellants.**

**Nos. 74–1635 and 74–1638.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1975.

Decided Jan. 29, 1975.

Howard S. Grimm, Jr., Auburn, Ind., Belle T. Choate, Indianapolis, Ind., for defendants-appellants.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before FAIRCHILD and TONE, Circuit Judges, and PERRY, Senior District Judge.*

TONE, Circuit Judge.

Defendants were convicted in a trial before a jury of unlawful possession with intent to distribute lysergic acid diethylamide, commonly known as LSD. They argue that there is a variance between the indictment and the proof, or alternatively an insufficiency in the evidence, because although the indictment charges and the evidence shows that they possessed and distributed LSD, the evidence also shows that they described the material only as psilocybin and mescaline. Defendant Mullins also contends that the evidence in support of Count I of the three-count indictment was insufficient as to him because it does not show that he was involved in the transaction proved under that count.[1]

Defendants offered no evidence. The government's evidence was as follows:

On the evening of May 29, 1973, a confidential informant and Charles E. Hampshire, who was working with the Narcotics and Dangerous Drugs Section of the Indiana State Police, met the two defendants at a residence in Gas City, Indiana. Moser asked Hampshire what he was interested in, and Hampshire asked what "they" had. Moser answered "that they had psilocybin, mescaline, PCP and coke."[2] Hampshire asked "what their prices were," and Moser

---

* Senior District Judge J. Sam Perry of the Northern District of Illinois is sitting by designation.

1. At the close of the government's case, Mullins moved for a judgment of acquittal as to each count of the indictment. The court granted the motion as to Count II, which concerned the transaction on May 30, 1973, presumably because Mullins was not present at that transaction.

2. Coke is the street name for cocaine and PCP is the street name for phencyclidine.

gave the prices of the various drugs he had mentioned. Hampshire stated that he "would be interested in purchasing an ounce of the psilocybin and a gram of the coke, and that if it proved satisfactory [he] would possibly want a half pound or a pound." Moser then stated that Hampshire and the confidential informant should return between 9:00 and 10:00 P.M. Later they returned and again met with the two defendants. Moser stated that he had the psilocybin but the coke had not been any good. Mullins said that he had injected himself with $25 worth of the cocaine and that "he still was not very high." Hampshire then said that he would not want the coke but "would try the psilocybin." Moser then handed Hampshire a bag containing reddish powder in exchange for $55. Moser stated that he would contact his supplier the next day and would have some additional coke that night.

The following evening Hampshire and the confidential informant returned to the same residence and met again with the defendants. Moser stated that he had not contacted his coke supplier yet but still had mescaline and gave the prices for various amounts. Hampshire said he would be interested in an ounce of the mescaline and "if it moved well" he might be interested in "half pound each of the psilocybin and the mescaline." Moser said that he did not have the mescaline bought yet and Hampshire should return later. Hampshire and the confidential informant left and returned later, at which time Moser handed Hampshire a package containing a blue powder that he said was mescaline in return for $55.

On July 10 Hampshire again met the defendants, this time at a residence near Jonesboro, Indiana. Mullins stated he wanted to take Hampshire and the confidential informant to his "stash," *i.e.*, the place where he kept his drugs. The defendants got into Hampshire's car and directed him to a place along a railroad track. Mullins left the car and returned shortly with a plastic bag containing a blue powder, which he handed to Hampshire, stating "that it was pure and that it would cut to a pound . . . that it was $550 a pound and $575 buffed." Hampshire asked the price of half a pound and Mullins said "$275 pure and $300 buffed." Hampshire then looked at Moser, who nodded his head in the affirmative. Hampshire told them he would "be interested in a half a pound buffed, if he could watch them buff it." They all then returned to the residence where they had met earlier. Moser left "to get the scales and stuff," and returned with scales, cornstarch and a bowl. The defendants then proceeded to mix other substances and the blue powder in measured amounts in the bowl. Eventually Moser delivered half the contents of the bowl to Hampshire, stating, "You owe us $300." Hampshire then paid Mullins the $300.

Anne Rummel, a chemist employed by the Indiana State Police Department, testified that she had chemically analyzed the substances received by Hampshire on the three occasions and they all contained LSD.

Each of the three counts of the indictment charged that the defendants unlawfully possessed with intent to distribute a quantity "of lysergic acid diethylamide, a Schedule I Controlled Substance, in violation of 841(a)(1), Title 21 of the United States Code." That section makes it "unlawful for any person knowingly or intentionally—

"(1) to . . . distribute, . . . or possess with intent to . . . distribute, . . . a controlled substance . . . ."

Section 841 is section 401 of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 84 Stat. 1236 (1970). Section 102(6) of the Act, 21 U.S.C. § 802(6), defines "controlled substance" to mean "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V or part B of this

subchapter." Section 202 of the Act, 21 U.S.C. § 812, which is contained in part B, establishes five schedules of controlled substances, contains a list of the substances which each schedule "shall initially consist of," and provides that the schedules "shall be updated and republished" periodically thereafter. Section 201 of the Act, 21 U.S.C. § 811, delegates the duty of updating and republishing of the schedules to the Attorney General. Schedule I, contained in section 202, lists in subsection (c) "any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances, or which contains any of their salts, isomers, and salts of isomers . . . :

"(9) Lysergic acid diethylamide

. . . . .

"(11) Mescaline

. . . . .

"(15) Psilocybin."

The updated and republished schedules promulgated by the Attorney General as provided in section 202 have continued to list these three substances in the same subsection of Schedule I.[3]

■ Defendants' variance argument is without merit. To require a reversal, a variance between the indictment and the proof must affect the substantial rights of the defendant. Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Cromer v. United States, 78 U.S.App.D.C. 400, 142 F.2d 697, 698 (1944), cert. denied, 322 U.S. 760, 64 S.Ct. 1274, 88 L.Ed. 1588 (1944). Here defendants' rights were not substantially affected if the evidence shows that they were aware of the nature of the substance they possessed.

■ The defendants' alternative argument is, in essence, that, since they said they were selling psilocybin and mescaline, the jury could not find they had the necessary specific intent to possess and distribute LSD. Knowledge and intent in narcotics cases, as in other cases, must ordinarily "largely be proved by circumstantial evidence," which includes "the circumstances as to the time and place of the transaction, the manner in which it was conducted and the price paid for the substance . . . ." Jackson v. United States, 330 F.2d 679, 681 (8th Cir. 1964), cert. denied, 379 U.S. 855, 85 S.Ct. 105, 13 L.Ed.2d 58 (1964); see United States v. Jones, 486 F.2d 476, 479 (8th Cir. 1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1415, 39 L.Ed.2d 472 (1974). Other relevant evidence in the case at bar included defendants' statements indicating that they were dealers in, and conversant with, various kinds of illicit drugs, their expertise in "buffing" the drug, and the testimony of Hampshire, who had been in narcotics work in that area for approximately two years, that everything he had purchased since he had "been working narcotics represented as mescaline and psilocybin has been LSD." The jury could reasonably have inferred from all the circumstances that the defendants were aware of the fact that the substance they possessed and distributed contained LSD.

It is a legitimate inference that one who possesses a dangerous drug knows what it is. United States v. Joly, 493 F.2d 672, 676–677 (2d Cir. 1974). While other evidence, such as the defendants' statements here that the substance was a different dangerous drug than it in fact was, may weaken the inference, "the legitimacy of the basic inference of knowledge does not automatically disappear because other evidence arguably points the opposite way" or because there were more than two alternative possibilities as to what the substance was. Id. at 676. Moreover, if a defendant did not learn what the substance was because he deliberately chose not to learn so he could assert his ignorance if he was discovered with the substance in his possession, he is chargeable with

---

3. 37 Fed.Reg. 9545 (1972); 38 Fed.Reg. 953 (1973); 38 Fed.Reg. 8254, 8256 (1973); 21 C.F.R. §§ 1308.11(d)(9), (11), (15) (1974); 39 Fed.Reg. 22140, 22141 (1974).

knowledge. United States v. Olivares-Vega, 495 F.2d 827, 830 (2d Cir. 1974); see United States v. Joly, *supra*, 493 F.2d at 674–675, 676–677. Here the drugs the defendants said they possessed and were distributing appear with LSD in the same subsection of the same schedule of controlled substances. The jury may reasonably have inferred that the defendants, in order to be able to say they did not know what they were distributing, deliberately chose to use the name of a similar substance which would be as salable and would also produce hallucinogenic results, making it difficult for the user to know the difference. Cf. United States v. Joly, *supra*, 493 F.2d at 674, 676–677; United States v. Olivares-Vega, *supra*, 495 F.2d at 830.

█ Defendant Mullins also contends that the evidence was insufficient to show that he participated in the May 29 transaction, which was the subject of Count I of the indictment. Mullins was present during the entire first and second conversations during which the negotiation and sale were carried out. Both Hampshire and Moser spoke of the defendants collectively as having the drug for sale. Mullins evidenced his participation in the transaction by stating of the other drug being offered for sale, the cocaine, that he had injected some of it and had not found it to be of high quality. The jury could have inferred that this was an attempt to gain Hampshire's confidence by showing that he could rely on the defendants to sell him only drugs of high quality. These facts, together with the evidence of Mullins's active participation in the July 10 transaction, which could be considered by the jury as showing his knowledge and intent, were ample to support the jury's finding that he was a party to the May 29 transaction, either as a direct participant or as an aider and abettor.

The judgments of conviction are affirmed.

Affirmed.