**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Paul GRATTAN,
Defendant-Appellant.**

No. 79–1096.

United States Court of Appeals,
Ninth Circuit.

Aug. 29, 1979.

Roger S. Auerbach, Auerbach & Freeman, Tucson, Ariz., for defendant-appellant.

Gerald S. Frank, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before DUNIWAY and ELY, Circuit Judges, and PORT,* District Judge.

* The Honorable Edmund Port, Senior United States District Judge for the Northern District of New York, sitting by designation.

DUNIWAY, Circuit Judge:

Grattan was charged in an indictment which reads, in pertinent part:

GRATTAN, . . . having been admitted to bail pursuant to the provisions of 18 U.S.C. § 3146(a) on or about July 25, 1977, and having subsequently been directed by the District Court for the District of Arizona at Tucson, Arizona in case number CR–76–504–TUC entitled *United States v. James Paul Grattan* to surrender to the United States Marshal at Tucson, Arizona on July 17, 1978, wilfully did fail to appear as required;

He was convicted by a jury and was sentenced to 30 months. We reverse.

Stated in the light most favorable to the government, the facts are these:

On February 17, 1977, Grattan was sentenced to two concurrent ten-year terms following federal convictions in Tucson on drug charges. He appealed to this court. In late July, 1977, he was released on a $50,000 appeal bond pursuant to 18 U.S.C. § 3148 and 18 U.S.C. § 3146(a). The terms of the bond did not require Grattan to reside within the district, did not place any restrictions on where Grattan might live or travel, and did not require him to notify the court or anyone else of any change of address or travel plans, or to keep in touch with anyone. As Judge Chambers said of such a bond, "[b]y its terms no obligation to appear was imposed on [Grattan] until this Court of Appeals was through with the case." *United States v. Brizuela*, 9 Cir., 1974, 508 F.2d 386, 387.

One Gerald Griffin had posted his Ramona, California ranch as collateral for Grattan's appeal bond. Griffin had expected that Grattan would in return loan him $85,000. The bond was signed by Grattan and his attorney, and stated Grattan's address to be a house (owned by Griffin) in Ramona, California. Grattan, his wife, and his stepson moved to that address. In late November, 1977, Grattan told Griffin that he was going to Mexico to secure the $85,000, and that he had permission to make the trip. Grattan did not ask the court for permission to travel to Mexico; he was not

required to have permission to do so. There is no other evidence as to whether he went to Mexico. Shortly thereafter, Grattan's wife also left Ramona. The stepson remained. Grattan left his driver's license, passport, two automobiles, a pet, and other personal effects at the Ramona address.

After Grattan left, Griffin had three phone conversations with Grattan and four phone conversations with Grattan's wife. They reassured Griffin that Grattan was making arrangements to obtain the $85,000. During the conversations, Grattan did not say where he was, nor was he asked, nor did he ask Griffin to have his mail sent on to a forwarding address. Grattan never sent Griffin the money he had promised to raise.

Around May of 1978, Griffin evicted Grattan's stepson and moved into the Ramona house. Griffin kept most of Grattan's mail in a pile because he expected that Grattan would return, but certified mail which Grattan himself had to sign for was returned to the post office. A postman testified that Griffin returned Grattan mail to him marked "moved." Grattan did not provide the post office with a forwarding address.

On June 9, 1978, this court affirmed Grattan's convictions. The district court entered an order directing Grattan to surrender to the Marshal at Tucson on July 17. On July 12, a clerk mailed a copy of the order, by certified mail, to Grattan at the Ramona, California address, the most recent address that she found in Grattan's case file. Because Grattan was no longer at the Ramona address, the post office was unable to deliver the certified letter containing the order, and returned it to the district court initialed moved, left no address.

There is no evidence that the district court or the United States attorney ever sent copies of the surrender order to Grattan's attorney (see Rule 49(b), F.R.Crim.P.) or to Griffin, his surety, or to anyone else. There is no evidence as to whether Grattan's attorney knew where he was. Grattan did not appear at the Marshal's office on July 17.

As this court said in an analogous case:

> A person charged with a knowing failure to perform any such duty must be informed which particular duty he disobeyed, and when he did it. The indictment here was properly specific. It did not open the case for proof of violation of duties not specified, no matter how clearly spelled out in the regulations. The appellant was charged with knowingly failing and neglecting to report for induction on October 13, 1955, pursuant to a notice to report on that date. He cannot be convicted on this indictment of a failure or neglect to perform a different duty at a different time. *Graves v. United States*, 9 Cir., 1958, 252 F.2d 878, 883. (citation omitted)

Here, the charge is that Grattan, having been directed by the district court to surrender to the Marshal at Tucson on July 17, 1978, wilfully failed to appear as required. There is no evidence that Grattan even knew that this court had affirmed his conviction, much less that he knew that the order of July 12, 1978 had issued. It may well be, as the United States argues, that if Grattan had intentionally, for the purpose of avoiding his duty to appear when ordered to do so, put himself beyond the power of the court to notify him, that would suffice to sustain the conviction. But to permit a jury to make such a finding on this record would be to permit a conviction based on pure speculation.

*United States v. Lujan*, 9 Cir., 1978, 589 F.2d 436, is not in point. It involved a forfeiture of a bail bond, not a criminal charge of failure to obey a specified order. Moreover, in that case, the order to appear was served by mail on Lujan, on his attorney, on his wife, and on his surety. And the order releasing him required Lujan to appear at such times as the court directed and to remain in personal contact with his attorney. Not so here.

The judgment is reversed. The indictment will be dismissed.