**UNITED STATES of America, Plaintiff,**

v.

**Robert PARKISON, Defendant.**

**No. 75–CR–73.**

United States District Court,
E. D. Wisconsin.

June 30, 1976.

David B. Bukey, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

James M. Shellow, Shellow & Shellow, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Defendant was indicted and subsequently convicted of possession with intent to distribute and distribution of approximately 1,700 dosage units of lysergic acid diethylamide in violation of section 401 of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841(a)(1). Post-trial motions have been filed with the Court seeking a judgment of acquittal pursuant to rule 29 or, in lieu thereof, a new trial pursuant to rule 33 of the Federal Rules of Criminal Procedure. After reviewing the briefs both in support of and in opposition to said motions and having been duly advised of the premises thereto, the Court is of the opinion that they must all be denied in accordance with the following memorandum opinion.

### I.

With regard to the motion for judgment of acquittal, the defendant relies upon the assertion that the proof offered at trial was at variance with the charges in the indictment. The variance, it is argued, affects substantial rights of the defendant and warrants a judgment of acquittal. *See, Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). More specifically, the variance is claimed to have resulted in the deprivation of defendant's right to be tried on an indictment returned by a grand jury and his right to notice of the charges against him.

During the trial, it became evident that current Government testing procedures were unable to distinguish between lysergic acid diethylamide and its salts, isomers or salts of isomers. Defendant's expert witness testified that adequate testing procedures were available but such were not utilized by the Government and that with regard to the procedures employed, the Government was unable to distinguish between lysergic acid diethylamide and lysergic acid diethylamide tartrate or Lampa. The latter two substances are respectively a salt and an isomer of lysergic acid diethylamide.

As a result of the testing deficiencies described above, the defendant argues that the Government in effect has not met its burden of proof as to the identity of the substance allegedly distributed. It is argued that the proof is therefore at variance with the indictment which charges the defendant with possession with intent to distribute and distribution of only the substance lysergic acid diethylamide and not its salt or isomer; and, accordingly, the defendant is entitled to a judgment of acquittal.

The Government relies upon *United States v. Moser*, 509 F.2d 1089 (7th Cir. 1975) which rejected a variance argument under 21 U.S.C. § 841(a)(1) in a distinguishable factual context.

Defendants' variance argument is without merit. To require a reversal, a variance between the indictment and the proof must affect the substantial rights of the defendant. *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *Cromer v. United States*, 78 U.S.App.D.C. 400, 142 F.2d 697, 698 (1944), *cert. denied*, 322 U.S. 760, 64 S.Ct. 1274, 88 L.Ed. 1588 (1944). Here defendants' rights were not substantially affected if the evidence shows that they were aware of the nature of the substance they possessed. 509 F.2d at 1092.

It is the Government's position that the technical nature of the variance involved in the case at bar had no effect on the rights of the defendant. *See, also, United States v. Van Buren*, 513 F.2d 1327 (10th Cir.), *cert. denied*, 421 U.S. 1002, 95 S.Ct. 2402, 44 L.Ed.2d 670 (1975).

The indictment reads in pertinent part as follows:

That on or about March 6, 1975, at Milwaukee in the State and Eastern District of Wisconsin,

ROBERT PARKISON

did knowingly and intentionally possess, with intent to distribute, and did distribute approximately 1,700 dosage units of lysergic acid di-ethylamide, a Schedule I Controlled Substance  .   .   .

The Government's evidence revealed that the defendant possessed with intent to distribute and did distribute the substance of lysergic acid diethylamide or one of its *chemical derivatives.* The Court is of the opinion that the variance is at most a highly technical one known only to those sophisticated in the ways of chemistry. It would approach the absurd to suggest that Parkison had no notice of the charges against him because the substance was lysergic acid diethylamide tartrate rather than lysergic acid diethylamide. The Court therefore finds little merit in defendant's contention that he was deprived of the right to notice of the charges against him.

Moreover, the Court is not convinced that there is a variance in the first place. Defendant's variance argument is predicated upon the theory that the free base is distinguishable from its salt, isomer, or salt of an isomer. There is no doubt that the free base is distinguishable from its salt in the ultimate chemical sense but the proscription in the eyes of the law runs to the free base or one of its chemical derivatives. Section 812 of Title 21 reads in pertinent part:

§ 812. Schedules of controlled substances—Establishment

\*    \*    \*    \*    \*    \*

(c) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances, or which contains any of their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible with the specific *chemical designation* :

\*    \*    \*    \*    \*    \*

(9) Lysergic acid diethylamide. (Emphasis added).

Whether the term used is "controlled substance" or "chemical designation," it is clear that it is the chemical family of a particular drug that is proscribed. In this sense the chemical designation, lysergic acid diethylamide, includes the base substance and any material, com-

pound, mixture or preparation which contains any *quantity* of the base substance or which contains any of its salts, isomers, and salts of isomers.

The indictment charges the defendant with possession with intent to distribute and distribution of "1,700 dosage units of lysergic acid di-ethylamide, a Schedule I Controlled Substance . . . ." The defendant is thereby charged with dealing with a particular controlled substance and the Government offered evidence demonstrating the existence of a quantity of that controlled substance. The Court is therefore persuaded that there is no variance between the offer of proof and the charges in the indictment as thus construed. The fact that the proof failed to distinguish the ultimate chemical form of the particular controlled substance is not relevant as long as the proof established beyond a reasonable doubt that the controlled substance and not *another* controlled substance was in fact present in some quantity.

Even if the Court were to narrowly construe the terms controlled substance or chemical designation as used in the indictment and 21 U.S.C. § 812(c)(I)(c), the "chemical" variance created by such a construction would not, in the opinion of this Court, substantially affect defendant's rights in any manner or form. *See, United States v. Moser, supra.* For the reasons stated above, the motion for a judgment of acquittal must be denied.

## II.

Defendant raises the following grounds in support of his motion for a new trial: (1) the verdict is against the great weight of the evidence; (2) prejudicial statements were made by the prosecutor in his opening statement; and (3) certain errors of law were made by the Court in instructing the jury.

■ Defendant first raises the argument that the verdict is against the great weight of the evidence because of the reasonable doubt created by the Government's inability to distinguish the free base form of the controlled substance from one of its chemical derivatives. This is a reargument of the "identity of substance" issue discussed in part I of this memorandum opinion. As stated in part I above, the evidence established that the controlled substance was present in either the free base or salt form. The evidence need not establish the ultimate chemical combination or chemical derivative of the particular controlled substance. The Court is satisfied that there is sufficient evidence in the record from which the jury could find the existence of some quantity of the controlled substance in the possession of the defendant.

■ Defendant next raises the issue of prosecutorial misconduct. During its opening statement, the Government noted that persons between the ages of 8 and 29 were present in the residence of the defendant at the time of the sale and that the residence was across the street from a junior high school. The Government's first witness also made reference to the proximity of the junior high school. At the conclusion of the Government's opening statement, defendant moved for a mistrial or, in lieu thereof, in limine to exclude all reference to the matters stated above.

The Court denied the motion for a mistrial and initially denied the motion in limine upon the ground that circumstances surrounding the drug transaction were relevant to the issues in the case. The Court reversed itself the following day and granted the motion in limine at or near the beginning of the presentation of the Government's case in chief. The reversal was predicated not upon the belief that the matters in question were irrelevant but upon the belief that the relevance was greatly outweighed by the possibility of prejudice to the defendant. It was only after the Government conceded that no proof would be offered from which the jury could infer the sale or distribution of drugs to minors that the Court felt constrained to exclude any further reference to minors or the proximity of the junior high school.

In addition to granting the motion in limine, the Court instructed the jury to

disregard the statements alluded to above.[1] Defendant disputes the curative effect of this admonishment and asserts that the jury was irreparably inflamed because of the highly emotional impact of the statements in question. Defendant also charges that the two instances described above were cases of deliberate prosecutorial misconduct designed to contaminate the minds of the jury.

The Court is not persuaded by defendant's arguments. The few statements were made early in the case and were not overly dramatized. The jury was instructed to disregard the statements and no further reference was made to them during the remainder of the trial. The trial lasted the better part of four days and involved extensive testimony describing the circumstances surrounding the drug transaction, the arrest of the defendant, and the identity of the substance. In light of the overwhelming evidence in support of the verdict and the curative effect of the instruction, the Court is of the belief that the defendant was not prejudiced by the statements in question.

Moreover, notwithstanding the protestations of the defendant to the contrary, the Court has no proof that the statements were designed solely to prejudice the minds of the jury. The matters in question were at least tangentially relevant and the Court cannot say from the present state of the record that the Assistant U. S. Attorney's conduct was solely calculated to inflame the minds of the jury. The statements were few in number, brief in length, and not overly dramatized. For the reasons stated above, the motion for a new trial as it relates to prosecutorial misconduct must be denied.

Defendant also asserts that the Court was in error in permitting the introduction of evidence surrounding the simultaneous transfer of what was purported to be amphetamines.[2] The evidence was admitted under an exception to the rule against the admission of evidence of other crimes which permits such evidence when it is offered to prove intent, knowledge, or some other element of the offense. See, rule 404(b), Federal Rules of Evidence (1975). The defendant now urges the Court to grant a new trial because of an alleged abuse of discretion on its part in that the limited relevance of the amphetamine transaction is far outweighed by possible prejudice to the defendant.

The Court is not persuaded that the simultaneous sale of another substance is irrelevant to the offense charged nor is the

---

1. Court's instruction to the jury given February 24, 1976:

   THE COURT: We have had several conferences in chambers and I suppose you have wondered what their subject was. There was a statement made in one of the opening remarks by one of the attorneys to the effect that there would be persons of certain ages in the house in which this alleged transaction was supposed to have occurred.

   I am advising the jury that this was a subject of one of the discussions that was held in chambers and the court has decided that as it understands that nature of the proof that's coming in, that it was unnecessary and really immaterial and, therefore, I am admonishing you that you should disregard that as it relates to the facts in the case and the proof that may come in this matter, and I would further admonish you that if a prosecutor in a criminal case makes prejudicial statements or elicits evidence that is unrelated to a charge, then you may properly consider whether that statement or that evidence was brought in for the purpose of intentionally prejudicing the jury against the defendant. If you find that the conduct of the prosecutor was for the purpose of intentionally prejudicing the jury, then you may consider that together with all of the other evidence in the case in determining whether the government has met its burden of proof; so that number one, I am admonishing you to wipe from your minds as much as that is possible any reference to ages given in this case, and secondly, that you should bear in mind that that did come in and you can consider that as you consider all of the other factors which you must consider as you measure and weigh the evidence in arriving at the truth of the case.

   Now, we may proceed with the trial.

2. Although the proof indicated that 20,000 units of amphetamines were to be transferred with the lysergic acid diethylamide, later chemical tests by the government indicated that the units transferred did not in fact contain amphetamines.

Court persuaded that such evidence was prejudicial to the defendant. Defendant acknowledges that the Government was required to prove possession with intent to distribute or intent to distribute. A simultaneous transaction involving an even larger number of units would be highly relevant to prove the necessary "intent" element alluded to above. In light of the isolated transaction charged in the indictment, the Court is of the opinion that the probative value outweighed any possible prejudice to the defendant, and that the matter in question was properly admitted to prove intent under rule 404(b).

Defendant also raises as errors of law the Court's instructions on the elements of the offense and on the identity of the substance upon the ground of duplicity. With regard to the latter there is no duplicity because the jury need only determine that a quantity of the controlled substance known as lysergic acid diethylamide is present in some form or another as discussed in part I of this memorandum opinion. As such, the jury never reaches the duplicity problem urged by defendant.

Defendant also asserts that the Court's instruction to the effect that defendant may be found guilty of violating section 841(a)(1) upon proof of either possession with intent to distribute *or* distribution is duplicitous. Section 841 of Title 21 reads in pertinent part as follows:

(A) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

■ The purpose of the statute is clearly directed at the unauthorized handling of controlled substances. The offense may be committed by doing any one of several things and, in such cases, all possibilities may be alleged in the conjunctive. *United States v. Jones*, 491 F.2d 1382 (9th Cir. 1974); *Gerberding v. United States*, 471 F.2d 55 (8th Cir. 1973). In *United States v. Amick*, 439 F.2d 351, 358 (7th Cir. 1971) the

Seventh Circuit Court of Appeals relied upon *Crain v. United States*, 162 U.S. 625, 636, 16 S.Ct. 952, 955, 40 L.Ed. 1097 (1896) in reaching a similar view:

The statute was directed against certain defined modes for accomplishing a general object, and declared that the doing of either one of several specified things, each having reference to what object, should be punished . . . We perceive no sound reason why the doing of the prohibited thing in each and all of the prohibited modes, may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute.

■ The indictment appropriately charges the defendant with possession with intent to distribute *and* with distribution which are *different means* of committing the same offense. It is therefore clear that there is no duplicity problem in the indictment. 8 Moore's Federal Practice, Criminal Rules ¶ 8.03[2]. The defendant objects to the disjunctive nature of the instruction tendered to the jury and not the indictment so that the line of authority which is cited above and which is relied upon by the Government is inapposite to the "duplicity" question in issue.

The Court read both Government proposed instruction 4 in a modified form and proposed instruction 5. Instruction 4 reads in pertinent part:

The Government must establish the following elements in order to prove the offense alleged in the indictment:

1. That the defendant distributed *or* possessed with intent to distribute a controlled substance.

\* \* \* \* \* \*

4. That the distribution *or* the possession with intent to distribute occurred on or about the time alleged in the indictment. (emphasis added)

Instruction 5 reads in pertinent part:

You are instructed that the Government need not prove both of these allega-

tions, it being sufficient to establish the first element of the offense that either *distribution or possession with intent to distribute* be proven. (emphasis added) A third instruction is necessary to a proper disposition of this issue. Defendant's proposed instruction 27 was also read to the jury.

You are instructed that you may not return a verdict of guilty unless you unanomously agree that the Government has proven beyond a reasonable doubt each and every element of the offense charged. If some of you conclude that only some of these elements have been proven and the remainder of you conclude that the other elements were proven, you may not, as a matter of law, convict a defendant.

█ It is defendant's position that the use of the disjunctive in instruction 4 was error, and that he was prejudiced in two ways. First, the general verdict does not reveal whether the offense was committed by possession with intent to distribute or by distribution. Defendant argues that he is potentially subject to double jeopardy in that he would have difficulty using the conviction as a plea in bar to a subsequent prosecution for one of the two "offenses" charged in the instant action. *See, United States v. Tanner*, 471 F.2d 128 (7th Cir. 1972); 8 Moore's Federal Practice, Criminal Rules ¶ 8.03[1]. Defendant also claims that he is prejudiced because there is no way to determine that the general verdict is in fact a unanimous verdict on the same offense. *United States v. Leggett*, 312 F.2d 566 (4th Cir. 1962).

The Court is persuaded that defendant has not been prejudiced by the disjunctive nature of instruction 4. The double jeopardy fear is largely illusory. The Government acknowledges that possession with intent to distribute and distribution are different means by which the single offense may be committed and not separate offenses. The Government would be estopped to deny otherwise in a subsequent suit. This distinguishes much of the authority relied upon by the defendant.

As to the claimed fear of a lack of unanimity, the jury was instructed as to this requirement in defendant's instruction 27. A review of the instructions detailed above indicates that the jury was informed of the elements of the offense and the need for unanimity as to each and every element. In instruction 5, the jury was advised of the fact that it need only find that the defendant distributed the controlled substance *or* that the defendant possessed the controlled substance with intent to distribute. In either case the jury was instructed that unanimity was required.

Perhaps, the instructions could have been more artfully drawn but the Court is of the opinion that even if error was committed it was of a harmless nature. As such, the alleged duplicity found in instruction 4 would not require a new trial. *See, United States v. Tanner, supra* ; rule 52(a), F.R. Cr.P.

█ The Court is also of the opinion that defendant waived his right to raise the duplicity issue as it relates to the elements of the offense. During the instruction conference held in chambers, the defendant failed to object to proposed Government instructions 4 and 5 as they relate to the duplicity issue. The defendant also approved the general verdict form which was submitted to the jury. After the instructions were read to the jury, the Court permitted the parties to place their objections on the record. At that time, defendant briefly objected to instruction 4 on duplicity grounds. However, defendant failed to object to the duplicitous nature of instruction 5 and failed to request a special verdict form. The latter request would have obviated the ambiguity which is the underlying basis of this duplicity argument. Defendant's conduct is at best inconsistent with the position now asserted in urging the Court to grant a new trial. For the reasons stated above, the Court is of the opinion that the various arguments of duplicity are without merit.

Defendant also objects to the Court's refusal to read instructions 5, 7, 9, 11, 12, 13,

14, 28, 29, 31, 34, 35, 36 and 37. Instructions 5, 9, 31 and 37 were given in a modified form and instructions 10, 11, 13, 14, 28, 34, 35 and 36 were rejected because of the Court's construction of controlled substance as discussed in part I of this memorandum opinion. Instructions 7, 12 and 29 were either repetitious or modified and incorporated into the Court's special instruction of the case. The Court is therefore of the opinion that there is no merit to defendant's position with regard to the instructions alluded to above.

 With regard to Government instruction 10,[3] the Court instructed the jury on the subject of proof of intent in pertinent part as follows: "it is ordinarily reasonable to infer that a person intends the natural and probable consequences of acts knowingly done or knowingly committed." See, Devitt and Blackmar, § 13.06. It is defendant's position that the final sentence permits the jury to infer one element of the crime from proof of the other elements. The Court finds little merit to this contention and is of the opinion that the instruction merely permits a reasonable inference on the part of the jury.

In defendant's instruction 1, the defendant requested a second cautionary instruction regarding the subject of prosecutorial misconduct. The Court is of the opinion that the jury was properly instructed at the time of the occurrence[4] and that further instruction would be repetitious, serve no useful purpose, and tend to place too much emphasis on the conduct of the prosecutor and not the facts in the case. The latter consideration was predicated in part upon the belief that the prosecutor had not exercised *bad faith* in his efforts in behalf of the Government. For the reasons stated above, the motion for a new trial must in all respects be DENIED.

**3.** Government instruction 10:

Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made and all other facts

NOW THEREFORE IT IS ORDERED that defendant's motion for a judgment of acquittal be and is hereby DENIED.

IT IS FURTHER ORDERED that defendant's motion for a new trial be and is hereby DENIED.

and circumstances in evidence which indicate his state of mind. It is ordinarily reasonable to infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

**4.** See Footnote 1.