**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George R. STUDNICKA,
Defendant-Appellant.**

**Nos. 84–5012, 84–5013.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 6, 1985.

Benedict P. Kuehne, David K. Tucker, Bierman, Sonnett, Shohat & Sale, P.A., Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Linda Collins Hertz, Chief, Appellate Section, Miami, Fla., Gregory W. Kehoe, David H. Lichter, Sonia Escobio O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT and HENDERSON, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

### I.

On September 6, September 29, October 14, and November 29, 1980, George R. Studnicka, the appellant, purchased a number of firearms at two different licensed firearms dealers in Hollywood, Florida. In

---

* Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

each transaction he filled out and signed a federal Firearms Transaction Record, Form 4473,[1] and wrote "no" in response to question 8A, section A which reads: "Are you under indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year?"[2] These responses, however, were false, because at the time of the purchases Studnicka was defending a two-count information in Florida state court charging him with possession and importation of more than one hundred pounds of marijuana, crimes punishable by prison terms of over one year each.

On February 6, 1981, Studnicka purchased another firearm from a licensed firearms dealer in Hollywood, Florida. He responded in the negative to question 8B, section A of Form 4473 which inquired: "Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year?"[3] Studnicka signed the form. This answer, however,

was false inasmuch as he had been sentenced to prison on January 15, 1981, on the possession of marijuana charge, after pleading no contest, and had taken an appeal.

On October 15, 1981, a Southern District of Florida grand jury indicted Studnicka,[4] charging him with five counts of knowingly making false and fictitious statements to licensed firearms dealers in connection with the acquisition of firearms we have described,[5] in violation of 18 U.S.C. § 922(a)(6) (1982).[6]

Following three continuances granted at Studnicka's request, the case was finally set for trial on March 11, 1982. Studnicka, however, failed to appear for trial on that date, and the district judge issued a bench warrant for his arrest. On March 17, 1982, Studnicka was indicted for his failure to appear for trial. He remained a fugitive until he was apprehended by Florida authorities and held on suspicion of crimes

---

1. There were 12 purchases in all, each requiring the completion of a Form 4473.

2. "Information" was defined in Form 4473 as a *"formal accusation of a crime made by a prosecuting attorney, as distinguished from an indictment presented by a grand jury."* (emphasis in original).

3. Question 8B continued:
   (Note: The actual sentence given by the judge does not matter—a yes answer is necessary if the judge could have given a sentence of more than one year. Also, a "yes" answer is required if a conviction has been discharged, set aside, or dismissed pursuant to an expungement or rehabilitation statute. However, a crime punishable by imprisonment for a term exceeding one year does not include a conviction which has been set aside under the Federal Youth Corrections Act.)

4. This was a second superseding indictment. The original indictment was returned on May 28, 1981. It charged Studnicka with one count of knowingly making false and fictitious statements to licensed firearms dealers in connection with the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6) (1982), and one count of receiving firearms that had traveled in interstate commerce from Georgia to Florida, in violation of 18 U.S.C. § 922(h)(1) (1982). On September 3, 1981, the jury returned a superseding indictment charging Studnicka with five counts of violating section 922(a)(6) and drop-

ping the section 922(h)(1) charge. On October 15, 1981, the grand jury returned a second superseding indictment charging Studnicka with the same five counts of violating section 922(a)(6). This second superseding indictment differed from the superseding indictment only in the identification of the licensed firearms dealers from whom the firearms were purchased.

5. The first four counts involved the appellant's false answers to question 8A, section A of Form 4473. The fifth count concerned the appellant's false response to question 8B, section A of Form 4473.

6. 18 U.S.C. § 922(a)(6) (1982) provides:
   **§ 922. Unlawful acts**
   (a) It shall be unlawful—...
   (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

not relevant to these appeals.[7] While in state custody, the Florida District Court of Appeal affirmed Studnicka's conviction for possession of marijuana; a detainer was placed against him, and he was turned over to the Florida prison system to commence service of his sentence.

On July 12, 1983, Studnicka was released to federal custody. He was brought before a United States Magistrate on July 20 for his initial appearance on the firearm and bail-jumping charges pending against him. Studnicka informed the magistrate that he was in the process of hiring an attorney, John Evans, but that Evans would not be available until Monday, July 25. As a result, the magistrate rescheduled his initial appearance for that day. On Monday an attorney standing in for Evans stated that Studnicka had become ill and that the United States Marshal had taken him to Jackson Memorial Hospital in Miami. In addition, the attorney stated that Evans would not be available until the following Monday, August 1. The magistrate rescheduled Studnicka's appearance for August 1. On that day, Evans appeared and indicated that he and Studnicka had been discussing the matter of representation, but that no agreement had been reached. Studnicka was not at the hearing, as he was still hospitalized.

On October 6, 1983, the prosecutor learned that Studnicka had been moved on August 6 to the federal Metropolitan Correction Center in Miami, where he was receiving medical treatment. The prosecutor immediately contacted Evans to determine whether he had undertaken to represent Studnicka. Evans indicated that he had not and that the matter remained unresolved.

On October 10, 1983, the district court convened a hearing to resolve the counsel issue. Studnicka appeared without a lawyer. Studnicka indicated that the law firm of Colodny and Fass, not John Evans, would represent him on the firearm charges. When no one from the firm entered a formal appearance on behalf of Studnicka, the Government, on October 12, moved the district court: (1) to determine whether Studnicka had retained counsel in the pending case and, if not, to appoint counsel; (2) to determine whether Studnicka was physically able to stand trial; (3) to set a trial date; and (4) to determine excludable time for purposes of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1982).

On October 13, 1983, the district court held a hearing to determine whether Studnicka had retained counsel for his two cases. Attorney Evans attended the hearing at the court's request. He stated that he would not be representing Studnicka in either of the cases. Attorney Joel Fass then advised the court that he had entered a formal appearance for Studnicka in the firearms case, but not the bail-jumping case. When the court asked Studnicka whether he wished counsel to be appointed in that case, Studnicka said that he was trying to hire a lawyer to handle it. The court, attempting to eliminate further delay, gave Studnicka five days to retain counsel for the bail-jumping case; otherwise, the federal public defender would be appointed to represent him. The court then set the cases for trial on November 14, 1983, with the firearms case proceeding first. Turning to the question of how much time had run on the speedy trial clock in the bail-jumping case, the court ruled that any time between October 13, 1983, and the start of the trial would be excludable, because Studnicka needed that time to prepare for trial.[8]

On October 24, 1983, Studnicka filed a formal response to the Government's October 12 motion and, in addition, moved the court to dismiss the indictment in his firearms case under the Speedy Trial Act.[9]

---

7. Studnicka was never formally charged with any of these offenses.

8. After the hearing Studnicka was arraigned on the bail-jumping charge.

9. Studnicka's motion in the firearms case did not state whether the court should dismiss the indictment with or without prejudice. His motion in the bail-jumping case did request dismissal of the indictment with prejudice. We, how-

Studnicka, represented by the federal public defender, filed a similar motion in the bail-jumping case. The court heard the first speedy trial motion on November 14, just before the trial of the firearms case commenced, and denied it. The court denied the second motion following a hearing on November 15.[10] At the November 15 hearing, Studnicka moved the court to continue the trial of his bail-jumping case. The court denied the motion, and Studnicka immediately pled guilty to bail-jumping.[11]

The trial of the firearms case commenced on November 14 before a jury, as scheduled. Prior to the impanelment of the jury, the prosecutor informed the court that he intended to establish, in the Government's case in chief, the fact that Studnicka had failed to appear for trial on March 11, 1982, as substantive evidence of Studnicka's guilt. The court ruled that the prosecutor could not introduce this evidence of flight as part of the Government's proof but that he could cross-examine Studnicka about his failure to appear if he took the stand. Fol-

lowing the court's ruling, Studnicka's attorney announced that his client would not testify.

The jury found Studnicka guilty on all counts. The court sentenced him to concurrent four-year terms of imprisonment for the firearm offenses, to be followed by a consecutive one-year term of incarceration for the bail-jumping charge.

Studnicka appeals from each conviction, presenting three claims of error. First, he contends that the district court erred in calculating the excludable time under the Speedy Trial Act and that both indictments should be dismissed with prejudice.[12] Second, he contends that he is entitled to acquittals on the firearm charges because the evidence was insufficient to convict. Third, he contends that he is entitled to a new trial in the firearms case because the court erred in ruling that the prosecutor could question him on cross-examination about his failure to appear when the case was initially set for trial on March 11, 1982.[13]

---

ever, do not view this as relevant to our analysis. *See infra* note 12.

**10.** The trial court's two rulings, considered together, disposed of the Government's October 12 motion.

**11.** Studnicka reserved his right, pursuant to Fed.R.Crim.P. 11(a)(2), to appeal the denial of his motion to dismiss the indictment because of a violation of the Speedy Trial Act.

**12.** Although Studnicka's motion in the firearms case did not specify whether he sought a dismissal of the indictment with prejudice, *see supra* note 9, we will treat his motion as seeking such relief.

**13.** Studnicka also contends that the trial judge relied on erroneous information concerning his past criminal conduct in fashioning his sentence. 18 U.S.C. § 3577 (1982) provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *See also United States v. Tucker,* 404 U.S. 443, 446–47, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (sentence imposed by a federal district judge is generally not subject to review if it is within statutory limits); *United States v. Marcello,* 423 F.2d 993, 1012 (5th Cir.) (court may consider defendant's past conduct

other than criminal convictions, including relations with police and public authorities, position in the community, and other factors), *cert. denied,* 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970). A defendant does of course have a right to "at least minimal safeguards to insure that the sentencing court does not rely on erroneous factual information when assessing sentence." *United States v. Espinoza,* 481 F.2d 553, 555 (5th Cir.1973). Where a defendant disputes information presented to the court in determining the sentence, the defendant must be given "at least some opportunity to rebut that information." *Id.* at 556. In this case, Studnicka had the opportunity to examine the presentence investigation report. The trial judge offered him an opportunity to comment on any sections of the report he found objectionable. Studnicka listed several items in the report which he requested be deleted, but gave no reasons for his objections. The court allowed the defendant to file an addendum setting forth his position on these matters, but he never did so.

In addition to being given an opportunity to comment on the accuracy of the presentence report before the sentencing judge, Studnicka has failed to present any evidence that would merit a new sentencing hearing:

Where a defendant claims that his due process rights have been violated by the sentencing court's reliance on false or unreliable information, he must make a showing of two elements: (1) that the challenged evidence is

For the reasons that follow, we reject each claim of error.

## II.

### A.

Appellant contends that he was not brought to trial in the firearms or bail-jumping cases within the time period prescribed by the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1982). Section 3161(c)(1) provides in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

The statute excludes certain periods of time from this seventy-day computation. *See* 18 U.S.C. § 3161(h) (1982). If a court determines that the defendant has been denied a speedy trial, it must dismiss the indictment. 18 U.S.C. § 3162(a)(2) (1982).[14]

Appellant was turned over to the federal authorities on July 12, 1983, and brought before a magistrate eight days later in both the firearms and bail-jumping cases. The

trial of these cases was set for November 14.[15] Appellant argues that the 117 intervening days constituted a violation of section 3161(c)(1).[16] We are not persuaded. Whether this period of time violated the Speedy Trial Act depends upon the number of days excluded pursuant to section 3161(h) from the 117 day total. We examine this issue as it relates to both the firearm and bail-jumping charges.

As for the firearm charges, the seventy-day calculation begins either from the filing date of the indictment or from the "date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date *last* occurs." 18 U.S.C. § 3161(c)(1) (1982) (emphasis added). As the indictment for the firearm charges preceded appellant's July 20, 1983 appearance before a magistrate, the latter date determines the starting point for the speedy trial calculation. The date of the trial, November 14, 1983, must serve as the terminal point. At the July 20 hearing, appellant moved for a continuance of the proceedings in order to retain counsel. The magistrate granted the motion. Under section 3161(h)(8)(A), any period of delay resulting from a continuance granted by the court is excludable where "the ends of justice served by taking such action outweigh the best interest of the public and

---

materially false or unreliable, and (2) that it actually served as the basis for the sentence. *United States v. Reme*, 738 F.2d 1156, 1167 (11th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985). Because Studnicka presented no evidence supporting either prong of *Reme*, we find no error in the sentencing proceeding.

**14.** 18 U.S.C. § 3162(a)(2) (1982) further provides that:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution ... on the administration of justice.

**15.** As we mentioned in Part I., *supra,* appellant pled guilty to the bail-jumping charge prior to trial.

**16.** Appellant assumes, as do we, that where a defendant fails to appear for trial and is recaptured a year later and placed in federal custody, the Government has 70 days in which to try him for the offense for which he was originally charged. Requiring that the period during which a defendant is a fugitive be excluded from the original 70-day calculation would be unfair to the Government, for if defendant became a fugitive 69 days after his initial appearance before a judicial officer, upon his recapture one year later, the Government would have only one day to try him for the original offense. We reject, however, the Government's argument that upon becoming a fugitive, a defendant waives his right to a speedy trial upon recapture. Requiring that the 70-day period begin anew upon a defendant's recapture is the most reasonable result.

the defendant in a speedy trial." [17] For the delay to be excluded, the court must specify in the record the reason for granting the continuance. 18 U.S.C. § 3161(h)(8)(A) (1982); *see also United States v. Wentland,* 582 F.2d 1022, 1024 (5th Cir.1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979).[18] On August 1, 1983, John Evans, appellant's preferred counsel, represented to the court that he was still conferring with appellant about appellant's representation. Over two months later Evans informed the prosecutor that he still had not determined whether he would be representing appellant. Finally, at the hearing on October 13, 1983, appellant indicated that he had managed to secure counsel for the firearms case but was still attempting to obtain counsel for the bail-jumping case.[19] These continuances, granted so that appellant could retain counsel, certainly served the ends of justice and outweighed the best interest of the public and the appellant in a speedy trial.[20] Thus, we hold that the time between July 20, 1983, and October 12, 1983, must be excluded from the seventy-day calculation.[21]

■ This is an appropriate result. The Speedy Trial Act was not enacted to allow a defendant to string the court along by delaying in retaining counsel and then use the Act as a sword to dismiss a proper indictment, rather than as a shield to protect against unnecessary and unfair delays. *See United States v. Stafford,* 697 F.2d 1368, 1375 (11th Cir.1983) (refusing to add to defendant's nonexcludable time "because of delay caused by his own inaction").

■ The period from October 12, 1983, through November 14, 1983, the day of the trial, must also be excluded. On October 12 and October 24, both the Government and appellant filed pretrial motions. These motions were not ruled upon by the court until November 14, 1983. Under section 3161(h)(1)(F) any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on ... such motion," is excluded from the seventy-day calculation. Thus, the period from October 12 to November 14 must be excluded as well. *See United States v.*

---

**17.** Although the statute refers to continuances granted by a "judge," we have treated magistrates as judges for the purposes of granting motions under section 3161(h). *See United States v. Mastrangelo,* 733 F.2d 793, 796 n. 2 (11th Cir.1984).

**18.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**19.** Appellant claims that the counsel he identified at the October 13 hearing as representing him in the firearms case, Joel Fass, at all times represented him in the firearms case. He argues that at the July 20 hearing he intended to indicate only that he had no counsel to represent him in the bail-jumping charge. The transcript of the July 20 hearing indicates that appellant was before the court on both the firearm charges and the bail-jumping charge. Presumably Studnicka would have mentioned Fass' name when asked if he had an attorney, if Fass had at all times been his attorney in the firearms case. In addition, Fass did not appear on behalf of the appellant until after Evans had determined that he was not going to represent Studnicka. It appeared to the district court, and it appears to us, that Studnicka tried to whipsaw

the Government by claiming that Fass was his counsel at all times on the firearm charges while using Evans to generate a delay for the purpose of creating a violation of the Speedy Trial Act.

**20.** Although the court did not make a formal statement at the hearing that the "ends of justice" would be best served by granting the continuance, we, as do the parties, infer this from the magistrate's stated purpose of the continuance which was to allow Studnicka time to retain the counsel of his choice to prepare his defense. Such a reason clearly satisfies section 3161(h)(8)(B) which enumerates factors determining whether a continuance under section 3161(h)(8)(A) should be granted, one of which is "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." 18 U.S.C. § 3161(h)(8)(B)(i) (1982).

**21.** The period between July 22 and August 5, 1983, during which appellant was in Jackson Memorial Hospital can also be excluded pursuant to 18 U.S.C. § 3161(h)(3)(A) (1982) which provides for exclusion of any period of delay resulting from the absence or unavailability of the defendant.

*Garcia,* 741 F.2d 363, 367 (11th Cir.1984) (three and one-half month delay between arraignment and trial did not violate Speedy Trial Act where much of time spent disposing of defendants' pretrial motions); *United States v. Mastrangelo,* 733 F.2d 793, 796 (11th Cir.1984) (four-month period between filing of motion and hearing excluded). As we decide that all of appellant's time in federal custody prior to trial must be excluded, we hold that there was no Speedy Trial Act violation in the firearms case.

■ We view appellant's time in federal custody prior to his scheduled trial on the bail-jumping charge excluded as well. As in the firearms case, appellant delayed in retaining counsel. His delay was so egregious that the district court finally appointed counsel for him. Thus, section 3161(h)(8)(A) mandates that the time occasioned by the court's granting of continuances, during which appellant was seeking counsel, be excluded from the seventy-day calculation. As the Government's October 12, 1983 motion was filed in the bail-jumping case as well, section 3161(h)(1)(F) operates to exclude all time from the filing of the motion, October 12, to the hearing on the motion, November 15. In addition, the trial court pursuant to section 3161(h)(8)(A) excluded all time after October 13, 1983, as time necessary for appellant to prepare a defense, given that the court was forced to appoint the public defender to represent him. That appellant clearly needed the additional time to prepare for his defense is evidenced by the fact that on November 15, 1983, he sought a continuance in the bail-jumping case which the court denied.

Appellant never exhibited an enthusiasm to proceed to trial in these cases. He moved for and was granted continuances on at least three occasions prior to the March 11, 1982, date originally set for the trial on the firearm charges. When the trial date finally arrived, appellant declined to attend the proceedings and became a fugitive. Once apprehended a year later and placed in federal custody, he seemingly adopted a strategy designed to delay the proceedings by creating ambiguities concerning his representation and then attempted to reap the benefits of a Speedy Trial Act violation. We refuse to sanction these actions and therefore decline to find any violations of the Act.

### B.

■ Appellant argues that the evidence was insufficient to convict him of the firearm offenses. In examining the sufficiency of the evidence in a criminal case, we must view the evidence in the light most favorable to the Government, allowing all reasonable inferences suggested by the evidence, and determine whether a reasonable trier of fact could find that such evidence established guilt beyond a reasonable doubt. *United States v. Carter,* 760 F.2d 1568, 1582 (11th Cir.1985); *United States v. Payne,* 750 F.2d 844, 855–56 (11th Cir. 1985). The evidence need not exclude every reasonable hypothesis of innocence or be inconsistent with every conclusion except that of guilt. *United States v. Loyd,* 743 F.2d 1555, 1560 (11th Cir.1984).

Appellant was convicted of violating 18 U.S.C. § 922(a)(6) (1982) which makes it a crime "for any person in connection with the acquisition ... of any firearm ... from a licensed ... dealer ... knowingly to make any false or fictitious ... written statement ... intended or likely to deceive such ... dealer ... with respect to any fact material to the lawfulness of the sale or other disposition of such firearm." The Government placed into evidence five Form 4473's completed by appellant containing the inaccuracies we detailed in Part I., *supra.* Appellant, citing *United States v. Squires,* 440 F.2d 859, 864–65 (2d Cir.1971), and *United States v. Hedgecoe,* 420 F.2d 458 (4th Cir.1970), argues that the Government failed to prove that he *knowingly* made the false statements; he contends that he did not read the questions to which he responded. Both *Squires* and *Hedgecoe,* however, involved signatures on an older and much different version of Form 4473 than the form at issue in this case. Except for some general background information concerning the gun purchaser, the

old Form 4473 required nothing of the buyer except his signature under fine print stating that the buyer was not prohibited under certain enumerated statutes from purchasing a firearm. The provisions of these statutes, however, were not conspicuously explained on the form.[22] Thus it is easy to conceive of someone signing the form before determining whether he was prohibited by law from purchasing a firearm.

The Form 4473 involved in this prosecution is much more specific than its predecessors. The form contains a section A, which is to be filled out by the buyer, and a section B, which the seller completes. The first seven questions in section A require general background information. Question 8 contains a series of eight questions which require a yes or no answer. Thus, a jury could reasonably conclude that it was impossible to respond to the questions in section A, including the two questions appellant answered falsely, without reading the questions. In addition, the Government produced as a witness at trial a salesman of one of the licensed firearms dealers from which appellant purchased several of the firearms, who testified that he always explained Form 4473 to the purchaser. This evidence was more than sufficient to support appellant's section 922(a)(6) convictions.

### C.

■ Appellant finally contends that the trial judge erred in ruling that the prosecutor could question him about his failure to appear for trial on March 11, 1982, if he took the stand in his own defense. Appellant argues that, because of this ruling, he decided not to take the stand and, therefore, was forced to forfeit his right to testify in his own behalf. The tactical decision not to take the stand, however, precludes appellant from challenging on appeal the trial court's ruling. A defendant must testify in order to raise and preserve this issue for appellate review. *United*

---

22. The "Notice to Transferees" which set forth the applicable prohibitions on purchase of a firearm were located at the bottom of the form, well away from the buyer's signature and

*States v. Wolfe,* 766 F.2d 1525, 1526–27 (11th Cir.1985) (per curiam) (defendant fails to preserve on appeal the issue of the trial court's denial of defendant's motion in limine to exclude evidence of his prior conviction for conspiring to smuggle marijuana where defendant decided not to take the stand); *see also Luce v. United States,* —— U.S. ——, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *United States v. Dimatteo,* 759 F.2d 831, 832 (11th Cir.1985) (per curiam).

### III.

In conclusion, we hold that the evidence was sufficient to support appellant's firearm convictions and that his motions for dismissal of the indictments under the Speedy Trial Act were properly denied. In addition, appellant failed to preserve for appeal the trial judge's ruling that would have allowed the prosecutor to impeach him with evidence of flight had he testified in his defense. We find no legal cause to set aside appellant's convictions; accordingly, they are

AFFIRMED.

---

"might well escape his attention." *United States v. Squires,* 440 F.2d at 865 (Moore, J., concurring) (Form 4473 then in existence reproduced as appendix).