[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12203
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 1, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-20704-CR-UU

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS FERNANDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 1, 2010)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Luis Fernandez appeals his convictions for carjacking, hostage-taking, using

or carrying a firearm during a crime of violence, and knowingly possessing a stolen firearm. After review, we affirm.

## I. BACKGROUND

### A. Indictment

In August 2008, a federal grand jury issued a six-count superseding indictment against Defendant Fernandez and his co-defendant, Miguel Vasquez-Febles. Count One (carjacking) charged that the defendants took from another by force, violence, and intimidation a 2007 Nissan Armada automobile, in violation of 18 U.S.C. § 2119. Count Two (hostage-taking) charged that the defendants seized and detained, and threatened to kill, injure, and continue to detain a person to compel a third person to do an act, in violation of 18 U.S.C. § 1203(a). Count Three (a second carjacking) charged that the defendants took from another by force, violence, and intimidation a 2006 Mercedes S500 automobile, in violation of 18 U.S.C. § 2119. Count Four charged that the defendants used and carried a firearm during the two carjackings and hostage-taking alleged in Counts One, Two, and Three, and knowingly possessed a firearm in furtherance of those crimes, in violation of 18 U.S.C. § 924(c)(1)(A). Each of these four counts charged that these criminal acts took place on or about February 21, 2007.[1]

---

[1]The defendants committed the first carjacking, then went to the first carjacking victim's home, where they committed the hostage-taking offense and carjacked the second vehicle, by

2

Count Five charged co-defendant Vasquez-Febles with possessing a stolen Beretta 9mm firearm (the "stolen Beretta") on or about February 21, 2007, the day of the other crimes, in violation of 18 U.S.C. § 922(j). Count Six charged Defendant Fernandez with possessing the stolen Beretta between the approximate dates of February 21, 2007 and August 23, 2007, in violation of 18 U.S.C. § 922(j). The stolen Beretta in Counts Five and Six was taken from the victims during the hostage-taking. The firearm charged in Count Four and used in the carjackings is a different firearm.

## B. Defendant's Motion to Exclude Evidence of Stash-House Robbery Conspiracy

The government filed a Rule 404(b)[2] notice of its intention to introduce evidence of a separate armed robbery of a cocaine stash house on August 23, 2007, with which Defendant Fernandez and others were charged in another case. According to the government, the carjacking victims' stolen Beretta was involved in that robbery conspiracy. The government's notice argued that the stash-house incident was "actually inextricably intertwined . . . [with] the charged offense conduct," but stated that the government filed the Rule 404(b) notice "in an

which the defendants left the home.

[2]See Fed. R. Evid. 404(b) (requiring the government, in a criminal case, to "provide reasonable notice" of evidence of "other crimes, wrongs, or acts" it intends to use at trial).

abundance of caution."

Fernandez filed a motion in limine to exclude evidence of the stash-house robbery conspiracy, arguing that the evidence was neither inextricably intertwined with the charged conduct in the present case nor admissible under Rule 404(b). The district court denied Fernandez's motion.

**C.      Fernandez's Motion to Sever Count Six**

Defendant Fernandez moved to sever Count Six or, alternatively, to amend the indictment to limit Count Six to conduct occurring on February 21, 2007. Fernandez argued that Count Six as drafted (i.e., charging possession of the stolen Beretta between February 21, 2007 and August 23, 2007) was not properly joined with the remaining counts because any possession of the stolen Beretta on August 23, 2007 was not part of the same course of conduct as the events alleged to have occurred on February 21, 2007.

The magistrate judge denied Fernandez's severance motion. The magistrate judge determined that Count Six was properly joined in the indictment and, in any event, Fernandez could not make a showing of compelling prejudice necessary for severance because the evidence surrounding the stolen Beretta's recovery was a "crucial piece of evidence" linking Fernandez to the February 21, 2007 offenses. The district court affirmed the magistrate judge's order.

4

## D. Trial Evidence of Carjackings and Hostage-Taking

At trial, the government called Yaroslavi Sierra, one of the victims. On February 21, 2007, Sierra was a student who lived with her husband Maykel Segui and her 23-month-old son Maykel, Jr. That day, Sierra left home around 6:15 a.m. to drive to school. While she was stopped at an intersection, a car stopped in front of hers, and a man with a gun got out. He knocked on the window and told her that if she did not open the door he would kill her. The man with the gun entered Sierra's car, a 2007 Nissan Armada, and put Sierra into the back seat. Sierra identified the man with the gun as Defendant Fernandez.

Another man got out of the car in front of Sierra's and got into the driver's seat of Sierra's car. Sierra identified the second man as co-defendant Vasquez-Febles.

Defendants Fernandez and Vasquez-Febles picked up two more men and drove Sierra back to her home. The men put on black masks and gloves and entered her house. Defendant Fernandez pointed the gun at Sierra and took her to the master bedroom. In the bedroom, Sierra saw the men pointing guns at her husband while he pointed a gun at them. Sierra's son was on the bed. Her husband Segui put his gun down after the men threatened to kill him, Sierra, and their son. The men took Segui's gun (the Beretta) and grabbed Segui. Then Sierra

5

and her son were taken to a different room.

Sierra could hear her husband being beaten and screaming. The men repeatedly asked her where her money and jewelry were. Twice they took Sierra to show her what they were doing to Segui, and told her she would be next. The first time she saw Segui, he was tied to a chair with a mask over his face. He was covered in blood, and the men were beating him with a flashlight. The second time the men had put Segui into the jacuzzi and they were shocking him with electrical cords. Sierra tried to escape with her son, but one of the men caught her.

A short time later Sierra heard one of the men say Segui was dead. The men came into the room where Sierra was, took photographic equipment, and went towards the garage, where Segui's 2006 Mercedes S500 was. Sierra heard the garage door open and the car leave the garage. Sierra found Segui, alive but badly hurt, on the floor in the master bedroom. Sierra ran to a neighbor's house for help, and the neighbor called the police.

Miami-Dade police officers examined the scene and recovered evidence, including a ski cap that contained Defendant Fernandez's DNA. Police also located Segui's Mercedes, which was abandoned in the middle of a Miami street. Several other witnesses, including Segui and various police officers, described the events of February 21, 2007 and the evidence that was collected and processed.

**E.     Trial Evidence of Stash-House Robbery**

The government called Detective Julio Estopinan, who testified about the conspiracy to rob a cocaine stash house. On August 23, 2007, Estopinan was working with a confidential informant ("CI") who met with Defendant Fernandez twice that day about robbing a stash house. On that afternoon, the CI first met with Defendant Fernandez and two other people at a restaurant to discuss the planned robbery.

A second meeting occurred later on August 23, 2007, at the apartment of one of the conspirators. The CI met with Defendant Fernandez and the other conspirators. At the meeting, they planned to wait until they received a call from a person they believed was transporting 20 to 25 kilograms of cocaine to a stash house, but who was actually an undercover officer. At that point they would receive the address of the stash house, and go to rob it.

Before the second meeting, the police officers instructed the CI to tell Defendant Fernandez and the other conspirators to put whatever firearms they wanted to bring to commit the stash-house robbery in the CI's car. The officers searched the CI and his car before the meeting and found no weapons. The CI met with Fernandez and the other conspirators at the apartment while officers watched. At the end of the meeting, the CI alone left in his car. Defendant Fernandez and

7

the other conspirators followed in another car (which later was identified as Onel Salgado's). The conspirators were arrested while they were still in that car. Following the arrests, Miami-Dade Police Sergeant Rudy Gonzalez searched the CI's car and found a black duffel bag containing firearms, including a Beretta 9mm handgun with the serial number BER 362205. This serial number matched Segui's Beretta 9mm handgun that was taken on February 21, 2007.

Onel Salgado, one of the conspirators, testified that on August 23, 2007, he was arrested with Fernandez and three other men while they were on their way to steal cocaine. Salgado was at the meeting in the apartment with Defendant Fernandez and the others. They discussed using firearms during the robbery, and looked for a bag to put them in. The weapons were in a car outside the apartment, and the conspirators were going to transfer them to the CI's car to take them to the robbery. The conspirators found a black bag. Salgado did not see if there was anything in the bag when they found it, but it looked like it had some weight in it. Salgado never saw any guns in the apartment.

Salgado testified that Defendant Fernandez, the CI, and one of the conspirators named Roberto Davila left the apartment with the black bag. When it was time to leave to go to the robbery, Defendant Fernandez and the other conspirators (other than the CI) traveled in Salgado's car. No one told Salgado

where the guns were, but he knew they were in the CI's car based on their earlier conversations.

Detective Robert Christie testified that on August 23, 2007, he was watching the apartment where Defendant Fernandez and the other conspirators met to discuss the stash-house robbery.[3]  At approximately 6:20 p.m., Christie saw Fernandez leave the apartment with the CI and Davila.  Davila was carrying a black duffel bag that appeared to have something in it.  The CI stopped at the back of his car.  Davila and Defendant Fernandez kept walking to a third car (belonging to one of the other conspirators, but not Salgado).[4]  Christie did not see the duffel bag placed into the third car, but saw that neither Davila nor Fernandez had the bag when they walked back towards the CI's car.  Fernandez then got into that third car with the duffel bag in it and drove that car next to the CI's car.  Davila went to his own car (the fourth car) and moved it close to the others.  Defendant Fernandez got out of the third car and stood with the CI at the back of the CI's car.  At the CI's car, the CI was "leaning in appearing to be doing something."  It was at this time, Christie testified, that the CI's audio recording of his conversations with the

---

[3]Christie was taking surveillance videos as he watched.  The government played the videos for the jury as Christie testified and described what he saw.

[4]There were four cars at the scene, which we describe for clarity as the CI's car, Salgado's car, the third car, and the fourth car (or Davila's car).  It is not clear from the record who owned the third car.

9

conspirators reveals Defendant Fernandez telling the CI, "I'm waiting for them to transfer the other handguns that they have there in order to close it[.]" Afterward the CI left in his car. Defendant Fernandez and the other conspirators followed in Salgado's car.

## F.     Defendant Fernandez's Decision Not to Testify

After the government rested and co-defendant Vasquez-Febles presented his defense, Defendant Fernandez raised the issue of whether, if he testified, he would be subject to cross-examination about his involvement in the stash-house robbery conspiracy. Fernandez wanted to testify to deny his involvement in the carjacking events of February 21, 2007, but wanted to invoke his Fifth Amendment privilege as to the planned stash-house robbery. The district court stated:

> [Rule] 611 says cross-examination should be limited to the subject matter of the direct examination.
> In this case, though, anything that has to do with the house opens up the subsequent robbery. It's within the scope, because the gun was stolen from the house.
> . . . [W]e're not going to be able to resolve the issue right now except to tell you that my view of the situation instinctively, and based on what I know of the law without researching this particular issue, is that the Fifth Amendment can't be used as a sword and a shield.
> If [Ferndandez] is going to take the stand and he's going to deny being at the [Sierra/Segui] house, then that opens up how he managed to come into proximity . . . of the gun that had been stolen from the house. It's so clearly to me within the scope of direct examination, it's not arguable.

10

The district court then informed Fernandez's counsel that he and Fernandez should discuss whether Fernandez wanted to testify based on the district court's preliminary conclusion that Fernandez would be subject to cross-examination about the events of August 23, 2007:

> . . . I think that you and your client need to discuss this issue, based on my preliminary view of the situation, which is that if he takes the stand and denies being at the house, then he is going to raise a very significant . . . noncollateral issue as to how it happens that this extraordinary coincidence occurs that he is in close proximity to the gun stolen from the house on a later date.
> . . . .
> [Y]ou're going to have to address it with [Fernandez] on the assumption that my preliminary view is the view that's going to prevail.

Fernandez's counsel later told the district court that Fernandez was "not inclined to testify" if he could be questioned about the events of August 23, 2007, unless "the remedy . . . if he did testify and he refused to answer questions concerning August 23rd on the grounds of the Fifth Amendment[] [was] that [the government] would be able to use [his refusal] against him." The district court informed Fernandez's counsel that if Fernandez took the stand and refused to answer questions about the August 23, 2007 events on cross-examination, the district court would strike his testimony from the record. But the district court went on to discuss case law that approved as a remedy for a defendant's selective invocation of the Fifth Amendment a jury instruction that the defendant's refusals to answer could be

11

considered in assessing his credibility. The district court stated it could "live with" such a remedy. After conferring with Fernandez, Fernandez's counsel told the district court that Fernandez would not be testifying, and he rested his case.

The jury found Fernandez guilty of Counts One through Four and Count Six. The district court sentenced Fernandez to life in prison, plus a consecutive term of 84 years. Fernandez appealed.

## II.  DISCUSSION

### A.     Evidence Regarding Stash-House Robbery Conspiracy

On appeal, Fernandez argues that the district court erred in denying his motion to exclude all evidence of the August 23, 2007 stash-house robbery conspiracy.[5] Under Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," although such evidence may be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). But evidence of criminal acts other than those with which the defendant is charged "is not extrinsic under Rule 404(b) if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary

---

[5]We review a district court's evidentiary rulings for abuse of discretion. United States v. Sarras, 575 F.3d 1191, 1209 n.24 (11th Cir. 2009).

12

to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense[s]." United States v. Wright, 392 F.3d 1269, 1276 (11th Cir. 2004) (quotation marks omitted).

We disagree with Fernandez's contention that the district court committed Rule 404(b) error. Under the particular factual circumstances here, evidence of Fernandez's participation in the conspiracy to rob the cocaine stash house on August 23, 2007 was inextricably intertwined with the evidence of the charged offenses. First, Fernandez was charged not only with the February 21, 2007 carjackings, hostage-taking, and use of a firearm, but also (in Count Six) with possessing between February 21, 2007 and August 23, 2007 Segui's stolen Beretta, which was stolen on February 21, 2007 during the carjackings. Second, evidence that Fernandez possessed the stolen Beretta in connection with the stash-house conspiracy supports a legitimate inference that Fernandez took part in the charged carjacking and hostage-taking offenses during which the Beretta was undisputedly stolen. See United States v. Burns, 597 F.2d 939, 942 (5th Cir. 1979) ("One found in unexplained possession of recently stolen property likely is the thief or privy to the theft. Therefore, guilt may be inferred from the fact of possession."); United States v. Davis, 487 F.2d 112, 119 (5th Cir. 1973) ("Unexplained possession of recently stolen property may be shown to permit an inference by the finder of fact

13

that the possessor participated in the theft of the property.").[6]  Third, the evidence

of Fernandez's participation in the stash-house conspiracy was needed to show his

possession of the stolen Beretta on or about August 23, 2007, as charged in Count

Six.  Fernandez was linked to the stolen handgun through his active participation in

the stash-house conspiracy, especially his movements and statements in gathering

the handguns (including the stolen Beretta) to be used in the planned robbery.

Under these facts, evidence of Fernandez's participation in the stash-house robbery

conspiracy was inextricably intertwined with evidence of the charged offenses, and

Fernandez's Rule 404(b) objection is misplaced.

We also disagree with Fernandez's contention that the evidence of the stash-

house robbery conspiracy should have been excluded as unduly prejudicial under

Federal Rule of Evidence 403.  Rule 403 provides that evidence, even if relevant,

"may be excluded if its probative value is substantially outweighed by the danger

of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of

cumulative evidence."  Fed. R. Evid. 403.  Exclusion of evidence under Rule 403

"is an extraordinary remedy that must be used sparingly because it results in the

---

[6]Decisions of the former Fifth Circuit issued before October 1, 1981 are binding
precedent in this Court.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en
banc).

14

exclusion of concededly probative evidence." United States v. US Infrastructure, Inc., 576 F.3d 1195, 1211 (11th Cir. 2009), petition for cert. filed (U.S. Dec. 30, 2009) (No. 09-967).  Furthermore, where evidence of other acts has been found to be inextricably intertwined with evidence of charged conduct, this Court usually does not find the intertwined evidence to be unduly prejudicial.  See id. (collecting cases, and noting that where the evidence is inextricably intertwined, it has not been "'dragged in by the heels' solely for prejudicial impact").

Evidence of the stash-house conspiracy, as explained above, was highly probative because it linked Fernandez to the stolen Beretta, which in turn linked him to the February 21, 2007 carjackings and hostage-taking.  The district court did not abuse its discretion in finding that the danger of undue prejudice did not substantially outweigh the probative value of the stash-house conspiracy evidence. In that regard, we note that evidence that Fernandez possessed the stolen Beretta on August 23, 2007 was one of three major pieces of evidence (along with Sierra's eyewitness identification and the DNA on the ski mask) implicating Fernandez in the events of February 21, 2007.  And importantly, after the stash-house evidence came in, the district court instructed the jury that Fernandez was "on trial only for those specific offenses alleged in the indictment."

B.    **Motion to Sever or Amend Count Six**

Fernandez contends the district court erred in denying his motion to sever Count Six (the stolen Beretta possession between February 21, 2007 and August 23, 2007) or alternatively to amend Count Six to restrict it to a charge of possessing the stolen Beretta handgun on or about February 21, 2007.

> We undertake a two-step analysis to determine whether separate charges were properly tried at the same time. First, we review <u>de novo</u> whether the initial joinder of charges was proper under Fed.R.Crim.P. 8(a). Second, we determine whether the district court abused its discretion under Fed.R.Crim.P. 14 by denying the motion to sever.

<u>United States v. Hersh</u>, 297 F.3d 1233, 1241 (11th Cir. 2002) (citations omitted).

Rule 8(a) provides that an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 8(a) is to be "construed broadly in favor of initial joinder." <u>Hersh</u>, 297 F.3d at 1241. Rule 14(a) governs the district court's ability to grant a party relief from prejudicial joinder. It states that if joinder of offenses in an indictment "appears to prejudice a defendant . . . , the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice so requires." Fed. R. Crim. P. 14(a).

Fernandez contends that Count Six, which charged him with possession of the stolen Beretta not only on February 21, 2007, the date of the other charged

16

offenses, but also through and including August 23, 2007, was not properly joined with the remaining counts of the superseding indictment under Rule 8(a).  He argues that any possession of the stolen Beretta on August 23, 2007 related to a different incident and was not part of the same course of conduct on February 21, 2007 that was the subject of all the other counts in the indictment.

We disagree.  Although the four corners of the indictment do not make plain the connection between Count Six and the other counts asserted against Fernandez, the government's proffer of evidence (which was later supported by the trial evidence) demonstrates that Fernandez's possession of the stolen Beretta arose from the February 21, 2007 carjackings, and thus from the same course of events that was the subject of all the other counts in the indictment.  Fernandez's possession of the stolen Beretta began with, and was caused by, his participation in the carjackings and hostage-taking on February 21, 2007.  The evidence that Fernandez's illegal possession of the stolen Beretta arose directly from the February 21, 2007 home invasion during which the Beretta was stolen was enough to show that Count Six and the other charged offenses were "based on the same act or transaction or . . . connected together [with] or constitut[ed] parts of a common scheme or plan," as Rule 8(a) requires.  See United States v. Dominguez, 226 F.3d 1235, 1238-39 (11th Cir. 2000) (finding that mortgage fraud charges were properly

17

joined with drug conspiracy charges because the government alleged the drug charges provided the motive and necessity for the mortgage fraud charges, and stating that "the fact that one illegal activity provides the impetus for the other illegal activity is sufficient to constitute a common scheme for joinder purposes").

We also conclude that the district court did not abuse its discretion in refusing to sever Count Six from the remaining charges. Not only did the district court properly conclude Count Six was properly joined, but it likewise was correct in determining that Fernandez could not show the requisite prejudice for a severance. As discussed earlier, the stolen Beretta firearm linked Fernandez directly to the February 21, 2007 carjackings and hostage-taking and thus, even if Count Six had been severed, the government could nevertheless have admitted evidence that Fernandez possessed the stolen firearm on August 23, 2007. See United States v. Dowd, 451 F.3d 1244, 1249-50 (11th Cir. 2006) (affirming denial of motion to sever from post-office robbery case a count charging defendant with possession, three days before robbery, of a gun not used during the robbery; court concluded that even if counts were misjoined, defendant could show no compelling prejudice because, inter alia, "the jury would have heard all of the firearms-related evidence even in a severed trial on only the robbery charge").

C.    **Threat to Strike Fernandez's Testimony**

18

Fernandez's final argument relates to the district court's statement to Fernandez's counsel, during a conference outside the presence of the jury, that if Fernandez took the stand but refused to answer questions regarding the events of August 23, 2007 on Fifth Amendment grounds, the district court would strike Fernandez's testimony. Fernandez admits the district court may have retreated from this statement.[7] Nevertheless, Fernandez still did not testify. He now argues that the district court's threat to strike his potential testimony was error, and contributed to his decision not to testify.

Fernandez has failed to preserve this issue for review. In Luce v. United States, 469 U.S. 38, 105 S. Ct. 460 (1984), the United States Supreme Court concluded that a district court's in limine evidentiary ruling, that a defendant could be impeached under Federal Rule of Evidence 609(a) with evidence of a prior conviction should he testify, was not reviewable because the defendant never testified. Luce, 469 U.S. at 39-43, 105 S. Ct. at 462-64. The Supreme Court reasoned that, since the nature of the defendant's testimony was unknown, and it was not known for certain whether the government would have actually chosen to impeach him using the prior conviction, a determination as to any possible harm

---

[7]Indeed, we earlier recited the district court's statements in full because it is clear the district court ultimately indicated that in lieu of striking Fernandez's testimony, it could accept the remedy of instructing the jury that Fernandez's refusal to answer questions based on selective invocation of the Fifth Amendment could be considered in assessing his credibility.

19

flowing from the court's ruling would be wholly speculative. Id. at 41-42, 105 S. Ct. at 463.

In United States v. Studnicka, 777 F.2d 652 (11th Cir. 1985), we extended Luce's rationale beyond Rule 609(a), and determined that a defendant who chose not to take the stand after the district court concluded that he could be cross-examined about his earlier failure to appear for trial could not challenge the district court's ruling on appeal. See Studnicka, 777 F.2d at 660 ("The tactical decision not to take the stand . . . precludes appellant from challenging on appeal the trial court's ruling. A defendant must testify in order to raise and preserve this issue for appellate review."). We expressly rejected the defendant's argument that the district court's ruling forced him to forfeit his right to testify. Id.

Here, after obtaining the district court's ruling that the government would be able to question Fernandez, should he testify, about how the stolen Beretta came to be in his possession on August 23, 2007, Fernandez chose not to testify. For this reason, he has failed to preserve any claim of error as to the district court's ruling. See Studnicka, 777 F.2d at 660.

### III. CONCLUSION

For the reasons set forth above, we affirm Defendant Fernandez's convictions for carjacking, hostage-taking, using or carrying a firearm during a

crime of violence, and knowingly possessing a stolen firearm.[8]

**AFFIRMED.**

---

[8]On appeal, Defendant Fernandez did not raise any errors as to his sentences.