NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2434
_____

UNITED STATES OF AMERICA

v.

RAMON FERRER,
AKA Poncho,

Ramon Ferrer,
                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court  No. 1-08-cr-00218-002
District Judge: The Honorable Sylvia H. Rambo

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 14, 2011

Before: RENDELL, SMITH, and ROTH, *Circuit Judges*

(Filed:  August 9, 2011)

_____

OPINION
_____

SMITH, *Circuit Judge.*

Ramon Ferrer was convicted, along with two of his three co-defendants, of (i)

attempt and conspiracy to distribute or to possess with intent to distribute more than 500

1

grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and (ii) interstate travel in facilitation of attempted drug trafficking, in violation of 18 U.S.C. § 1952(a)(3). The gist of the criminal conduct was a plot to transport 23 pounds of methamphetamine from Georgia to Pennsylvania for sale to one Antonio Pagan, who turned out to be a government informant. Although the substance delivered to the informant initially field-tested positive for methamphetamine, later lab tests revealed that it in fact contained no narcotics. Ferrer appeals his conviction and sentence. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231; ours is premised on 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Ferrer raises five assignments of error, none of which has merit. First, he says that the District Court should not have denied his motion in limine to restrict the scope of his cross-examination. Ferrer says that he would have liked to testify at trial, but that he was dissuaded from doing so by the possibility that the prosecution would use the opportunity to cross-examine him about issues outside the subject matter about which he would have testified. Unfortunately for Ferrer, his decision not to testify precludes us from reviewing the District Court's ruling. In *Luce v. United States*, 469 U.S. 38 (1984), the Supreme Court held that denial of a motion in limine under Fed. R. Evid. 609(a) was not reviewable where the defendant did not testify. The Court noted that a court cannot assess the balance of probative value against prejudicial effect without knowing the precise content of the testimony in question. In addition, any harm resulting from denial of the motion is speculative: an in limine ruling may be altered; the government might decide not to use the evidence that was the subject of the motion after all; and the

2

defendant's decision not to testify might actually have been motivated by something other than the motion's denial. Moreover, there is no way to assess whether an error is harmless if its effect on the defendant's case is not known, and a rule allowing review where the defendant did not testify would allow him to "plant" error in a trial by making dubious motions and then declining to testify. *See id.* at 41–42. Each of these rationales is equally applicable to a motion under Rule 611(b), and our sister circuits have extended *Luce* beyond the Rule 609(a) context. *See, e.g.*, *United States v. Nivica*, 887 F.2d 1110, 1115–17 (1st Cir. 1989); *United States v. Studnicka*, 777 F.2d 652, 660 (11th Cir. 1985). Ferrer's brief does not address this issue, and we see no reason why *Luce* should not control. We therefore will not entertain his appeal of the District Court's denial of his motion in limine.

Ferrer next disputes the District Court's finding that he was a manager or supervisor of a drug-smuggling organization, which qualified him for an enhancement under U.S.S.G. § 3B1.1(b). We review the District Court's factual finding regarding the defendant's role in the offense for clear error. *See United States v. Hart*, 273 F.3d 363, 378 (3d Cir. 2001). The District Court rested its conclusion that Ferrer was a manager or supervisor on several grounds: Ferrer solicited Pagan to be a customer of and distributor for the organization of which he was a part. He rented facilities for the storage of drugs and put them to use. He rented vehicles for the transportation of drugs and personally travelled between Georgia and Pennsylvania several times to supervise drug transactions. He directed one of his co-defendants to bring two pounds of methamphetamine to Pennsylvania. And he helped to coordinate a meeting in Georgia that was a precursor to

the attempted drug deal that is the subject of this prosecution. *See* App. 130–31. Ferrer protests that there was "significant evidence that [he] was not a manager or supervisor," but was nothing more than a courier. Ferrer Br. 20. On clear-error review, however, it is not our role to weigh one side's evidence against the other's. Reversal is appropriate "only if [the factual finding] is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *Shire U.S., Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 352 (3d Cir. 2003) (quoting *Am. Home Prods. Corp. v. Barr Labs., Inc.*, 834 F.2d 368, 370–71 (3d Cir. 1987)). We cannot say that the court's conclusion here lacks an evidentiary basis, and it must therefore be affirmed.

Ferrer next argues that the District Court should not have counted the full 23 pounds of counterfeit methamphetamine for sentencing purposes. Ferrer was convicted of attempt and conspiracy. The comments to the sentencing guidelines provide that the relevant amount for sentencing a criminal convicted of an inchoate offense is not the amount actually delivered (since no actual delivery is required for conviction), but rather the agreed-upon amount. *See* U.S.S.G. § 2D1.1 cmt. n.12; *United States v. Burke*, 431 F.3d 883, 887 (5th Cir. 2005). The jury's conviction entails findings that Ferrer intended to complete the full 23-pound deal, that he believed that the substance being delivered was in fact methamphetamine, and that he was part of a conspiracy (i.e., a criminal agreement) to complete the crime. The District Court thus did not err in its application of the guidelines.

Ferrer's fourth argument is that for sentencing purposes, the court should not have considered drugs and drug amounts that were involved in past, uncharged transactions.

4

Section 1B1.3(a)(2) of the sentencing guidelines permits counting past acts as "relevant conduct" if they "were part of the same course of conduct or common scheme or plan as the offense of conviction." Each of the transactions in question was a sale of drugs from Ferrer to Pagan; they were all acts in furtherance of an illicit business relationship. This is a sufficient "common factor," *id.* cmt. n.9(A), for all of them to be considered in determining Ferrer's sentence.

Finally, Ferrer claims to have been the victim of "sentencing entrapment"—the idea being that although he admits to a proclivity to commit a lesser offense, the government impermissibly enticed him into committing a greater crime. Ferrer acknowledges a predisposition to agree to deliver as much as six pounds of methamphetamine to Pagan, but argues that he never would have agreed to provide the additional seventeen pounds if Pagan had not prevailed upon him. We have not formally accepted sentencing entrapment as a valid theory, *see United States v. Sed*, 601 F.3d 224, 229 (3d Cir. 2010), and this is not an appropriate case in which to do so. The record shows that preliminary discussions involved as much as 70 pounds of narcotics, before the deal was scaled back to 23. It was only after that agreement had been formalized that Ferrer told Pagan that he would only be able to provide five or six pounds. Pagan then "cursed the shit out of him" and told Ferrer that he "could find six pound[s] of meth on the side of the road," App. 54, whereupon Ferrer agreed to uphold the initial 23-pound bargain. The initial agreement to deliver 23 pounds of methamphetamine was a sufficient basis for the District Court's determination that Ferrer was predisposed to participate in a drug sale of at least that scale, particularly in light of the evidence that he had previously

5

been involved in multiple other large narcotics transactions (ten kilograms of cocaine, 100 pounds of marijuana). Because Ferrer was so predisposed, he would be unable to successfully invoke sentencing entrapment even if it were a recognized doctrine.

We will affirm the District Court's judgment.